WILLIAM A. HARDT and Others, Respondents, *v.* MOSES S. LEVY, Appellant, Impleaded, etc.

*An action by the general creditors of a firm, for the appointment of a receiver and a distribution of its assets, is maintainable against a limited partnership — not against a general partnership — effect of the death of the special partner — when a certificate of renewal creates a new partnership — creditors' rights — estoppel.*

An action brought by certain general creditors of a firm in behalf of themselves and of all other creditors thereof, having for its object the appointment of a receiver and ultimately the ratable distribution of the assets of the partnership, cannot be maintained against the members of a general partnership, although it may be maintained against the persons forming a limited partnership, after its insolvency.

A limited partnership, under the firm name of Levy Bros. & Co., was duly formed April, 1884, with Julius and Augustus H. Levy as general partners, and Adolph Levy as special partner. In a little over a year the special partner died, but the business was continued for the full term of the co-partnership agreement, at the end of which an instrument was executed purporting to be a certificate of renewal, bearing date the last day of the term, but verified and recorded several days later. When such time had expired by limitation, another instrument, purporting to be a certificate of renewal, stating the names of the original partners, and also naming Moses S. Levy as a new general partner, and Augustus H. Levy, as executor of the estate of Adolph Levy, deceased, as a special partner, was filed and recorded.

On the trial of an action brought by certain creditors of the firm on behalf of themselves and all other creditors thereof, for the appointment of a receiver and for other relief, it was adjudged that the certificate did not operate to renew and continue the prior special partnership, but that it contained facts sufficient to constitute a new limited partnership, and that such was its legal effect.

*Held*, that the special partnership was terminated upon the death of the special partner, and as no provision was made in the articles of co-partnership to continue it in the manner authorized by the statute in the event of the death of the special partner, it could not be revived.

The certificate of renewal and affidavit did not state that a contribution had been made in cash of $100,000 by the special partner for the purposes of the partnership about to be created, but in effect that more than six years prior to that time a limited partnership was formed, at which time that sum was contributed by a person now deceased, no part of which had been withdrawn by, or paid or transferred to him or his estate.

*Held*, under the circumstances, assuming that the court had the power to spell out of the facts recited in the certificate an attempt to form an original limited partnership, when nothing of the kind was intended by any of the parties, that the certificate did not create a new special partnership.

When a limited partnership, by force of the statute, becomes a general partnership, the creditors of the latter cannot treat the limited partnership as in force as to them and have a remedy accordingly.

It was not shown that the defendants, except by the filing and publication of the certificate, ever held themselves out as constituting a limited partnership, or that the plaintiffs or any other creditors, prior to becoming such, knew or supposed that the partnership of the defendants was statutory, or that any creditor ever gave credit to the firm believing it to be a limited partnership or in any way acted upon the faith of any representation that it was such.

*Held*, that the defendants were not estopped from asserting that their partnership was general.

APPEAL by the defendant, Moses S. Levy, from a judgment of the Supreme Court in favor of the plaintiffs, rendered at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 30th day of March, 1893.

*Benjamin N. Cardozo*, for the appellant.

*Blumenstiel & Hirsch*, for the respondents.

PARKER, J.:

The plaintiffs, as general creditors of a firm of which the defendants are members, instead of proceeding in actions at law to secure their respective claims, instituted this action in behalf of themselves and all other creditors of the firm, having for its object the appointment of a receiver and ultimately a ratable distribution of the assets of the partnership.

Such a suit cannot be maintained against the members of a general partnership, but it was long ago held in *Innes* v. *Lansing* (7

Paige, 583), that it might be against the persons forming a limited partnership after insolvency.

That case has been so far followed that the rule it declares must be deemed established. The opinion also asserts that a creditor may, if he so elects, proceed at law to enforce collection of his debt. Subsequently it was so decided in *Van Alstyne* v. *Cook* (25 N. Y. 489). These plaintiffs chose to proceed in equity, as they may if the partnership be limited, and may not if it be general.

Which of the two it was presents the principal legal question involved. The facts are undisputed, and are briefly as follows.: A limited partnership under the firm name of Levy Bros. & Co. was duly formed in April, 1884, with Julius and Augustus H. Levy as general partners, and Adolph Levy as special partner.

In a little over a year the special partner died, but the business was continued on for the full term, when an instrument was executed purporting to be a certificate of renewal, bearing the date of the last day of the term, but verified and recorded several days later. When such term had expired by limitation, a new instrument, purporting to be a certificate of renewal, stating the names of the original partners, and also naming Moses S. Levy as a new general partner, was filed and recorded. It was in form following :

"Levy Bros. & Co. Notice of renewal of limited partnership. This is to certify that the limited partnership formed by the undersigned Julius Levy and Augustus H. Levy with Adolph Levy, on the 11th day of April, 1884, pursuant to the provisions of the statutes of the State of New York, under the firm name of 'Levy Bros. & Co.,' and which by its terms expired on the 31st day of December, 1887, and which was renewed and continued in pursuance ·of said statutes on the 31st day of December, 1887, has this day been renewed and continued in pursuance of said statutes by the said Julius Levy, Augustus H. Levy and the undersigned Moses S. Levy, and the said Augustus H. Levy, as executor of the estate of Adolph Levy, and the terms of said renewal and continued partnership are as follows :

" *First.* The name or firm under which said renewal or continued partnership is to be conducted is ' Levy Bros. & Co.'

" *Second.* The general nature of the business to be transacted by said renewal and continued partnership is the manufacturing and

selling of clothing at wholesale; that said business is to be conducted in the city of New York.

"*Third.* The names of all the general and special partners therein are as follows: Julius Levy, Augustus H. Levy and Moses S. Levy are the general partners, and Augustus H. Levy, as executor of the estate of Adolph Levy, deceased, is the special partner; that all of the said general partners and the special partner reside in the city of New York, county and State of New York.

"*Fourth.* The amount of capital which the said Adolph Levy hereinabove named, as the special partner heretofore contributed to the common stock, and which has been actually and in good faith paid in cash, is the sum of one hundred thousand dollars. Such contribution and payment were made at the commencement of the limited partnership by the said special partner. No part of said sum of one hundred thousand dollars has been withdrawn by or paid or transferred to, the said Adolph Levy, the said special partner, nor has any part thereof been withdrawn by or paid or transferred to his estate, but the whole amount thereof remains in said limited partnership wholly unimpaired, and the whole amount thereof, namely, one hundred thousand dollars, is contributed by the said Augustus H. Levy, as executor of the estate of said Adolph Levy, deceased, as said special partner, to the common stock of such renewed and continued limited partnership.

"*Fifth.* The partnership hereby renewed and continued is to commence on the 1st day of January, 1891, and is to terminate on the 31st day of December, 1893. In witness whereof, the parties above named have hereunto severally subscribed their names, this 31st day of December, 1890."

This writing was executed, acknowledged, verified, filed and recorded as provided by the statute.

The learned trial court reached the conclusion that the certificate did not operate to renew and continue the prior special partnership, because it declared that a new general partner had been admitted to the firm, which brought it within that provision of the statute which declares: "Every alteration which shall be made in the names of the general partners * * * and the death of any partner, whether general or special, shall be deemed a dissolution of the partnership. * * * And every such partnership which shall be carried on

after such alteration shall have been made, or such death shall have occurred, shall be deemed a general partnership in respect to all business transacted after such alteration or death.   *   *   *"   (4 R. S. [8th ed.] 2493, § 12.)

It was further determined, however, that while the certificate purported to renew and continue an existing limited partnership, it contained facts sufficient to constitute a new limited partnership, and such was its legal effect, and for that reason judgment was entered in favor of the plaintiffs for the relief prayed for in the complaint.

The primary object of the act authorizing limited partnerships which first found a place among the statutes of this State in 1822, was to encourage those having capital to enter into partnership with those having skill and practical business experience, by restricting the responsibility of the former to the sum actually contributed to the firm.

The secondary object was the protection of those dealing with the partnership, and that was attempted to be reasonably secured by requiring the special partner to pay in cash the sum contributed by him; authorizing the general partners only to transact the business of the partnership; prohibiting the special partner from binding the partnership, or his employment as agent, attorney or otherwise to transact any business on account of it; proclaiming that only the names of the general partners shall be inserted in the firm name; providing for the bringing of suits either by or against the general partners, as if there were no special partners; preventing the special partner withdrawing any portion of the sum contributed by him during the continuance of the partnership, or any of its effects, except actual profits made upon the original capital; declaring void as against creditors of the partnership every sale, assignment or transfer of any of the property or effects of the firm, or of the property or effects of the general or special partner, after the firm or himself has become insolvent, or in contemplation of such insolvency, with an intention of giving a preference either to a creditor of the firm or to a creditor of the general or special partner; debarring the special partner from claiming as a creditor until the claims of all other creditors shall be satisfied, except for claims contracted pursuant to section 17; requiring the making of a

public record containing the name of the firm; general nature of the business done; names of all the general and special partners, distinguishing which are general and which are special; amount of capital contributed by the special partner and the term of the partnership. Thus enabling all who might desire to ascertain the principal features of the partnership.

To guard against deceit, it was provided that if any false statement be made in the certificate or affidavit, all the persons interested in the partnership shall be liable for all the engagements thereof as general partners.

It was further provided that if any partnership be renewed or continued otherwise than as the act provides, or if there be an alteration in the names of the general partners, in the nature of the business, in the capital contributed by any special partner, or the death of any partner, and the business be thereafter carried on, as to such business it shall be deemed a general partnership.

In case of a violation of the provisions of sections 20 and 21, which relate to the disposition of partnership property after insolvency, or in contemplation thereof, the special partner participating therein or consenting thereto is made liable as a general partner.

Thus it appears that a compliance with the provisions of the statute was attempted to be secured, either by imposing upon all the partners, both general and special, a liability for the partnership engagements, or declaring the partnership a general partnership. The statute nowhere suggests that, in the event of insolvency, the assets of the partnership shall be marshaled and ratably distributed among the creditors of the firm. It does not provide for, nor in terms countenance, such a suit.

Chancellor WALWORTH, in *Innes* v. *Lansing (supra)*, founded upon sections 20 and 21, prohibiting the giving of preferences, the conclusion that the Legislature could not have intended that a creditor of an insolvent limited partnership should be compelled to proceed to judgment at law, the necessary effect of which might be to give him a preference over other creditors, and accordingly held that equity would take jurisdiction in such case.

While his determination that such a suit would lie has ever since been followed, it was expressly held in *Van Alstyne* v. *Cook (supra)* that the statute referred to preferences voluntarily given by the part-

ners, and does not apply to judgments recovered against the members of a limited partnership who may be sued before or after insolvency as other natural persons, and the judgments obtained enforced out of the partnership assets, although the effect may be to deprive other creditors from securing any portion of their claims. It is apparent, therefore, that there is nothing in the statute, nor in the construction so far given to it, which aims to prevent a diligent creditor from obtaining that advantage which the law universally sanctions, or which is intended to assure those dealing with a limited partnership of a ratable proportion of the avails of its assets, in the event of insolvency. A strained construction of certain of the provisions of the statute should not, therefore, be made for the purpose of affording a remedy which it nowhere contemplates.

That which the parties did should be examined in the light of the exactions of the act, and if found to have been a substantial compliance with its requirements, either for the purpose of continuing the partnership first formed, or creating a new limited partnership, the plaintiff's position is well grounded, otherwise not, unless their further contention be well taken, which is that whether a valid limited partnership exists or not, the defendants cannot be heard to deny its existence.

It will tend to avoid confusion if the question of estoppel be discussed independently of those relating to the validity, or invalidity, of the alleged limited partnership.

We have then for further consideration three questions :

(1) Was the original limited partnership legally continued ?

(2) If not, did the certificate last made operate to create a new limited partnership ?

(3) If the partnership be general, are defendants estopped from asserting that such is the fact?

The trial court was of the opinion that the original limited partnership was not legally renewed and continued, because the certificate expressly recited the admission to the firm of another general partner.

The happening of another event necessarily effected the same result, and we will first advert to it.

No proposition can be plainer than that there cannot be a revival and continuance of that which does not exist. Unless there was a

valid limited partnership at the time of the making of the certificate intended to effectuate a renewal in December, 1887, there was nothing for it to operate upon. A renewal may continue, but cannot give life. Adolph Levy, the special partner, died more than a year and a half before that time.

In all cases of general partnership the death of a member marks a dissolution of the firm. (*Kennedy* v. *Porter*, 109 N. Y. 526–549.) Chief Judge RUGER, in delivering the opinion of the court, said in part, touching agreements in partnership articles providing for a continuing of the partnership in the event of the death of one of the members : " We do not believe that any provisions made beforehand in reference to the death of a partner, or any agreements or arrangements made subsequently to his death, can prevent this dissolution. \* \* \* As the partner who has died cannot by possibility continue a member of the firm, so any firm of which he is not a member, whether it contains his executors or his children, cannot be the same firm as that of which he was a member. \* \* \* All these agreements and arrangements, and all that can be made for a similar purpose, are, in fact, only bargains for the creation of a new partnership when the old one ceases to exist."

Section 12 of the Limited Partnership Act (4 R. S. [8th ed.] 2493) provides that the death of a partner, " whether general or special, shall be deemed a dissolution of the partnership," unless otherwise provided in the articles of partnership, when it may be continued under certain conditions. As there does not appear to have been any such stipulation in the articles of partnership, the exception is not applicable. The same section further declares that " every such partnership which shall be carried on after \* \* \* such death shall have occurred, shall be deemed a general partnership in respect to all business transacted after \* \* \* such death."

It thus appears that by operation of the very statute under which the partnership was created it became dissolved upon the death of the special partner ; the rights and privileges, the duties and liabilities of the partner ceased as to all future transactions to be governed by the provisions of the act.

As no provision was made in the articles of partnership to continue it in the event of death in the manner authorized by the statute, there was no method by which the old partnership could

have been revived. It will be observed that the observations which we have quoted from *Kennedy's* case are applicable to this situation.

Necessarily the partnership existing after the filing of the second certificate was general, and for the reasons already assigned the making of the third certificate did not operate to renew a limited partnership for there was none in existence.

The ground on which the trial court rested its determination that the last certificate did not effectuate a renewal of the limited partnership, assuming there was one in existence, is well supported, for the statute provides that any alteration in the names of the general partners shall work a dissolution of the partnership, and it shall henceforth be general. Necessarily it should be so, for the admission of new general partners changes the partnership. It is no longer the same partnership as before, and the rules regulating an original partnership should govern its formation.

We are thus brought to the question whether the certificate of renewal can be considered as the original formation of a limited firm.

That the parties to it intended to renew an existing partnership is apparent from it. Had the partnership which was by it sought to be continued been in fact a limited partnership, the object aimed at would have been accomplished had there been no change in the partners. And it might be urged that the courts cannot create for the parties a different contract than they made for themselves. But we shall not discuss that subject as we prefer to dispose of the question on the ground that, assuming the courts have the power to spell out of the facts recited in the certificate an attempt to form an original limited partnership when manifestly nothing of the kind was intended by any of the parties, still such effect cannot be given this certificate because it is not in substantial compliance with the statute.

A careful analysis of the facts recited was made by the learned trial judge, and a comparison of the result attained, with the statutory requirements, was made for the purpose of showing how nearly it conforms to the demands of the statute. With the exception of the clause respecting the contribution of special capital, this was necessarily so, because " the evidence of the renewal or con-

tinuance must be furnished in the same manner as that of its formation. The same formality must be observed." (*Bank* v. *Colgate*, 120 N. Y. 381.)

But with respect to the capital contributed by the special partners, the statements must necessarily differ.

When attempting to create an original limited partnership the statute requires that the special partner pay in, in cash, the amount of his contribution. This requirement cannot be satisfied by the turning over of merchandise or other property of the value of the special partner's contribution. (*Van Ingen* v. *Whitman*, 62 N. Y. 513, 519; *Bank* v. *Sirret*, 97 id. 320-328.)

Nor can it be done in any of the many ways which the ingenuity of man has suggested, other than a simple compliance with its terms by the payment of cash. Further, the affidavit annexed to the certificate must show that it has actually been done. So that those dealing with the partnership may know that at the time of the creation of the partnership there was in cash, available for the purpose of the partnership, the amount stated in the certificate.

But when a limited partnership is renewed new capital need not be contributed. It may be that the capital contributed has become seriously impaired, but that does not deprive the parties of the right of renewal; the privilege of prolonging the life of the partnership. And for the purposes of renewal the statute is satisfied by statements in the certificate and affidavit to the effect that when the limited partnership about to be renewed was originally formed, the special partner contributed the amount specified in the certificate, and has not since withdrawn any portion of it. It need not be stated that the capital remains unimpaired, and if it be done it will be treated as surplusage. (*Bank* v. *Colgate, supra.*)

Now the certificate and affidavit before us state, not that a contribution had been made in cash of $100,000 for the purposes of the partnership about to be created, but in effect that more than six years ago a limited partnership was formed, at which time that sum was contributed by one Adolph Levy, now dead, no part of which had been withdrawn by or paid or transferred to him or his estate. A statement in so far as the capital of the special partner is concerned sufficient to effect a renewal of an existing limited partnership, but not to create one.

It is said that for all that appears in the certificate before the court the contribution was in cash, for it is stated in one portion of it that the said $100,000 is contributed by the said Augustus H. Levy, as executor of the estate of the said Adolph Levy, deceased.

It is apparent from that which precedes as well as that which follows the assertion of contribution by the executor, that the $100,000 thus alluded to was the sum paid in by the special partner in 1884, and not thereafter withdrawn.

Indeed, the certificate considered as an entirety, presents no basis for the assertion that the executor at that time paid in the sum mentioned, or intended to have it understood that he had. But if it was possible to isolate the expression referred to from other assertions in the certificate touching the contribution of capital, and by whom contributed, still it would fall short of the requirements of the statute. It commands something more than a statement in the certificate of the amount of the special partner's contribution. An affidavit must be filed declaring that such contribution has been actually and in good faith paid in cash. The affidavit not only fails to show that the executor as special partner paid such sum in cash, but it distinctly asserts to the contrary. It declares " that the sum specified in the certificate of the formation of the said limited partnership to have been contributed by said special partner in said partnership to the common stock, to wit, the sum of one hundred thousand dollars by the said Adolph Levy (which the certificate shows was paid in over six years before), has been actually and in good faith paid in cash ; that no part of said sum of one hundred thousand dollars has been withdrawn, but the whole thereof, to wit, one hundred thousand dollars, *remains invested in said limited partnership* wholly unimpaired, and has been contributed by said special partner as capital to the common stock of said renewed and continued limited partnership."

It thus appears on the face of the papers that there was no payment in cash, but instead that which was contributed was " invested in said limited partnership " (as the partnership is described in the affidavit), but which was a general partnership, as we have already shown.

While it is possible to change an existing general partnership into a limited one, the property of the general partnership cannot, nor

can any part of it, be turned over in lieu of cash to make up the amount to be contributed by the special partners. Payment in cash into the partnership will alone satisfy the demand of the statute. (*Bank* v. *Sirret*, 97 N. Y. 320; *Van Ingen* v. *Whitman*, 62 id. 513.)

If the views so far expressed be correct, it follows that the partnership of the defendants is general, and not limited, and there remains for consideration the question of estoppel.

It is urged that the defendants having failed to create a limited partnership as they intended to do, and supposed they had done, they not only became general partners and liable as such for the debts of the firm, which is the penalty imposed by statute for a failure to comply with its provisions, but in addition they can be lawfully proceeded against as a limited partnership by such creditors as may prefer that remedy.

In other words, in so far as the general creditors are concerned, these defendants may be proceeded against by a portion of them as general partners, and by another portion as if a limited partnership had been constituted.

The penalty of a general partnership was imposed upon those attempting but failing to renew a statutory partnership for the benefit of the creditors of such firm.

No other penalty was added or suggested, and it would be strange indeed if an effort to comply with the statute, and that alone, should visit the members of the firm with the responsibilities of a general partnership, and at the same time deny to them the right to say to a creditor, whose only knowledge, if he have any, of the attempt to form a limited partnership was derived from the record, "The statute declares for your benefit that 'I am a general partner.'"

The case of *Durant* v. *Abendroth* (97 N. Y. 132) does not apply.

Judge RAPALLO did say in that case, and correctly, that "if it (the firm) had undertaken to make an assignment with preferences, such assignment could not have been sustained, on the ground of the violation of the statute. That violation could be taken advantage of only by creditors, and its consequence simply was to give them recourse against the special partner personally, as if he had been a general partner."

But the action did not arise under sections 11 or 12, which declare

that the effect of certain acts shall be to render that which was a limited partnership general. It arose under section 8, which provides that "No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed ; and if any false statement shall be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

It will be observed that the section quoted does not provide that the effect of a false statement shall be to make the partnership general, but it attempts to secure the creditors by providing that in such case all the partners, whether general or special, shall be liable for all the engagements of the firm.

And the construction given to that section by the case cited was, in substance, that when a certificate and affidavit regular in form are filed, but the statements made therein are false in fact, the limited partnership continues to exist, but with a penal liability imposed upon the special member of the firm.

It is apparent, therefore, that *Durant's* case does not support the contention that when a limited partnership by force of the statute becomes a general partnership, as provided in section 12, the creditor may still, if he so wills, treat the limited partnership as in force as to him and have a remedy accordingly.

Unembarrassed, then, as this case is by any previous binding adjudication, the question of estoppel can be quickly disposed of.

There is not in the record a word of testimony suggesting that the defendants, except by the filing and publication of a certificate void upon its face, ever held themselves out as constituting a limited partnership. It does not contain a hint that these plaintiffs, or any other creditor, knew or supposed, prior to becoming such, that the partnership of defendants was statutory. There is no testimony to the effect that any creditor ever gave credit to the firm as being a limited partnership, or in any way acted upon the faith of any representation that it was such. The facts upon which to rest an estoppel must be proved ; they will not be presumed. Here there is proven but one of the several facts essential to its support, and that consists of the record by which the defendants undertook to create a limited partnership.

It will not be presumed that the creditors had knowledge of the existence of the record, but if it should be, it would not avail them, because it is void on its face, and having knowledge of its contents, they would be charged with knowledge of its invalidity.

The judgment should be reversed, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, with costs to appellant to abide event.