SCHLUTER, PETICIONARIO, v. TEXIDOR, JUEZ DE DISTRITO, DEMANDADO Y MUÑOZ DÍAZ ET AL., INTERVENTORES.

SOLICITUD para que se expida un auto de *certiorari*, al Juez de la Corte de Distrito de San Juan, Sección 1ª., en un procedimiento sobre nombramiento de administrador judicial.

No. 210.—Resuelto en febrero 4, 1918.

CERTIORARI—COBRO DE DINERO—SOCIEDADES MERCANTILES—ACREEDORES—INTERÉS EN EL FONDO ESPECIAL.—Cuando la teoría de una demanda en cobro de dinero seguido contra una mercantil es la de que los demandantes son meros acreedores, excluyendo la idea de que interesen la liquidación de la sociedad en la que tienen un interés o una responsabilidad a *pro rata* en las deudas por razón de ser herederos de uno de los socios, tal reclamación es enteramente adversa a los intereses de los otros socios y a los de cualesquiera acreedores de la sociedad, por lo que, no siendo el pleito en manera alguna uno sobre liquidación de cuenta puesto que los demandantes sostienen que la suya fué balanceada y reconocida por el socio gestor como cierta y debida, la condición de los demandantes no se diferencia de la de cualquier otro mero acreedor contractual, y no hay lugar a la pretensión de que ellos tienen un interés en el fondo especial de la sociedad.

ID.—ACREEDORES—CORTES DE EQUIDAD—SENTENCIA.—Para que un acreedor pueda invocar la jurisdicción de una corte de equidad no es siempre necesaria una sentencia cuando el deudor admite la existencia de la reclamación, aun cuando esta reclamación pueda ser impugnada por otros acreedores.

ID.—ADMINISTRADOR JUDICIAL—JURISDICCIÓN.—El nombramiento de un administrador judicial descansa en la sana discreción de la corte, pero esto es siempre que la jurisdicción haya sido invocada en forma adecuada.

ID.—ID.—OPOSICIÓN DE SOCIOS Y ACREEDORES—CONTRATO DE SOCIEDAD NO RENO-

VADO.—El mero hecho de que algunos de los socios de una mercantil estén conformes en poner los asuntos de la sociedad en manos de un administrador, no impide que los demás socios y acreedores se opongan e insistan en que los negocios de la sociedad sean liquidados, cuando el contrato de sociedad ha expirado sin ser formalmente renovado ni prorrogado.

ID.—ID.—EQUIDAD—REMEDIOS EN LEY.—De acuerdo con la equidad, la regla establecida es que los demandantes en una acción de la naturaleza de este caso, deben agotar todos sus remedios en ley.

Los hechos están expresados en la opinión.

Abogados del peticionario: *Sres. H. R. Francis y A. Arnaldo Sevilla.*

El juez demandado no compareció.

Abogados de los interventores: *Sres. Eduardo Acuña y Henry G. Molina.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Fernando Schluter solicitó un auto de *certiorari* para anular el nombramiento de un administrador. Gustavo Muñoz Díaz y María Belén Muñoz Pérez Moris habían establecido una demanda intitulada "Acción para el nombramiento de un administrador judicial." Sin embargo, en la súplica de la demanda, estos demandantes pidieron que se dictara una sentencia por la suma de $13,373.98, y, como una medida provisional, que se nombrara un administrador. La solicitud sobre nombramiento de administrador se alega estar basada en el artículo 182 del Código de Enjuiciamiento Civil, y, en verdad, la corte al conceder lo solicitado basó su decisión en el párrafo 1 del referido artículo. El artículo, transcrito totalmente, es así:

"Art. 182.—Un síndico podrá ser nombrado por la corte en que un pleito esté pendiente o se haya fallado, o por el juez de dicha corte:

"1. En una acción entablada por un vendedor para anular una compra fraudulenta de bienes, o por un acreedor para someter a su reclamación cualesquiera bienes o fondos, o entre socios, u otras personas que en común posean o estén interesadas en bienes o fondos, mediante solicitud del demandante o de cualquiera parte, cuyo derecho o interés en dichos bienes o fondos o productos de los mismos sea presumible, siempre que se probare que los bienes o fondos co-

rren peligro de perderse, trasladarse o sufrir daños de consideración.

"2. Después de la sentencia, para dar cumplimiento a la misma.

"3. Después de la sentencia, para disponer de los bienes de acuerdo con la misma, o para conservarlos mientras se resuelve una apelación; o en los procedimientos auxiliares para dar cumplimiento a la sentencia, cuando la orden de ejecución de la misma, ha sido devuelta incumplimentada, o el deudor declarado tal en la sentencia se niega a entregar su propiedad para dar cumplimiento al fallo.

"4. En los casos en que una corporación haya sido disuelta, o se hallare insolvente, o en inminente peligro de insolvencia, o hubiere perdido sus derechos como tal corporación.

"5. En todos los demás casos en que como hasta el presente se han nombrado síndicos, conforme a los usos de las cortes de equidad."

La demanda, como fué redactada originalmente, contenía la alegación de que la suma de $13,373.98 era el saldo de cierta cuenta corriente adeudada por el demandado Pérez Moris, Lynn & Compañía a los demandantes, como herederos de María Belén Pérez Moris. Más tarde los demandantes, como consecuencias de una excepción previa que fué radicada por el peticionario Fernando Schluter, demandado en la corte inferior, enmendaron su demanda en el sentido de que apareciera de la misma que la referida suma de $13,373.98 tenía su origen en el hecho de que María Belén Pérez Moris había sido uno de los socios de la firma de Pérez Moris, Lynn y Compañía; pero fué también claramente alegado que su cuenta había sido balanceada en agosto 2 de 1917, y que tal suma líquida no había sido pagada a los demandantes porque las condiciones actuales de Pérez Moris, Lynn y Compañía no permitían que tal pago se efectuara. No podemos convenir con la corte inferior en que los demandantes hayan demostrado interés especial alguno en ninguna propiedad o fondos de Pérez Moris, Lynn y Compañía. Por el contrario, la teoría de la demanda es que ellos son meros acreedores. Lo contenido en la demanda excluye la idea de que ellos interesan la liquidación de una sociedad en la que tienen un interés o una responsabilidad a *pro rata* en las deudas. Su reclamación es enteramente adversa a los intereses de los otros

socios y a los de cualesquiera acreedores de la sociedad. El pleito no es en manera alguna uno sobre liquidación de cuenta, puesto que ellos sostienen que su cuenta fué balanceada en agosto 2, 1917, y reconocida por el socio gestor como cierta y debida. La condición de los demandantes no se diferencia de la de cualquier otro mero acreedor contractual. No hay lugar a la pretensión de que ellos tienen un interés en el fondo especial. *Carter Bros.* v. *Hightower,* 79 Tex. 135.

Tendremos por tanto que examinar los procedimientos para ver si el nombramiento del administrador puede ser sostenido bajo el inciso 5 del referido artículo 182, esto es, si existe algún precedente en las cortes de equidad que pudiera justificar el nombramiento de administrador hecho. La teoría de los interventores está basada, como nosotros la entendemos, en tales precedentes de las cortes de equidad.

El peticionario alegó que, antes de que un acreedor pueda invocar la jurisdicción de una corte de equidad, debe haber agotado todos sus remedios legales, por ejemplo, obteniendo una sentencia y tratando infructuosamente de ejecutarla. El caso más corriente es aquel en que existe algún impedimento para ejecutar la sentencia, como un traspaso fraudulento o un fideicomiso, de modo tal que el título legal no, esté a nombre del deudor. Pero hay también otros fundamentos dentro de las jurisdicciones de equidad. Puede decirse de paso que no es siempre necesaria una sentencia cuando el deudor admite la existencia de la reclamación, pero no dudamos que la reclamación podría ser impugnada por otros acreedores.

No intentaremos enumerar los casos que justificarían el nombramiento de un administrador, porque estamos convencidos de que no se ha establecido en la demanda fundamento alguno en equidad. En ella se alegaba en sustancia que los demandantes eran los únicos herederos de María Belén Pérez Moris Lynn; que la demandada, Pérez Moris, Lynn y Compañía, era una sociedad limitada dedicada al negocio de imprenta y a publicación de periódicos, especialmente del Bole-

tín Mercantil de Puerto Rico; que la referida sociedad estaba constituída mediante escritura de junio 26, 1910, y que habiendo expirado la prórroga en junio 3, 1915, los demandados Ramón Pérez Moris, Fernando Schluter Rennenberg, y María Canals Texidor continuaron el funcionamiento de la sociedad, cuyo término había expirado, bajo el mismo nombre, y bajo la misma dirección de Ramón Pérez Moris Lynn; y que los demandados lo eran en tal carácter de socios. La demanda entonces expresa el origen de la deuda de $13,373.98, a que ya nos hemos referido, y que los demandados habían tratado de recuperar dicha suma del socio gestor.

En el párrafo quinto los demandados dicen que la compañía demandada debe a varias personas, entidades y corporaciones, crecidas sumas de dinero que no puede satisfacer ni podrá cubrir en un futuro inmediato por su carencia de metálico y de crédito.

El sexto párrafo dice que varios acreedores han expresado su inconformidad a esperar más para el pago de sus deudas o a prorrogar los vencimientos de sus obligaciones.

El séptimo párrafo establece que la demandada es dueña de un importante y acreditado establecimiento litográfico, con toda la maquinaria moderna necesaria para hacer toda clase de trabajos litográficos, y que también es dueña del periódico conocido con el nombre de Boletín Mercantil de Puerto Rico; y que aún cuando el establecimiento es fuente de considerables negocios y beneficios para la demandada, las circunstancias de la actual guerra, por razón de las dificultades de tráfico, han causado una paralización de sus negocios que le hace imposible cumplir sus compromisos pendientes, y que requiere el auxilio de la corte para que ordene que la propiedad de la demandada no quede sujeta a los embargos que los acreedores están por ejecutar ni a su venta en ejecución mediante subasta a precios ruinosos tanto para los acreedores como para la propia demandada.

Que por razón de las circunstancias apuntadas la demandada está en inminente peligro de insolvencia, que podría ser

remediado en beneficio de ambas partes si la corte, en protección de los intereses de las partes, tomara a su cargo los negocios de dicha firma y nombrara un administrador. La demanda concluye con una súplica adecuada. El demandado Schluter excepcionó, los otros demandados registraron sus contestaciones; la contestación del socio gestor admitió la deuda, y ambas contestaciones expresamente muestran conformidad con el nombramiento del administrador.

El demandado Fernando Schluter radicó, además, de su excepción, un escrito de oposición al nombramiento del administrador, en el cual admitía la insolvencia de la compañía demandada, Pérez Moris, Lynn y Compañía, pero también establecía una reclamación como acreedor por cantidad debídale en su capacidad de socio industrial, desde enero a octubre de 1917. Ernesto Fernando Schluter registró una solicitud de intervención y fué admitido como parte. El alegó que era un acreedor de Pérez Moris, Lynn y Compañía por la suma de $10,682.40 y que registró una demanda para recobrar la misma y oponiéndose al nombramiento de un administrador. Aparece en alguna parte de los procedimientos o fué admitido por las partes, que Ernesto Fernando Schluter es hijo de Fernando Schluter y es dueño del interés que reclama por traspaso héchole por su padre. Hubo una comparecencia acerca de la moción para el nombramiento de un administrador, en la que se hizo oposición por los demandados Schluter fundada principalmente, como aparece de sus alegaciones, en que los demandantes no habían presentado el caso en una forma propia para la intervención de equidad, porque dichos apelantes no agotaron primero los remedios adecuados en ley.

Examinaremos los argumentos de los interventores, demandantes en la corte de distrito. Ellos trataron de distinguir los principios generales, como están enunciados en *High on Receivers*, párrafos 403, 406, diciendo que este caso tiene una faz distinta por cuanto en él se trata de una sociedad en

comandita en estado de insolvencia. Una sociedad en comandita tiene sus peculiaridades, pero no se nos cita caso alguno en que, a falta de estatuto, se le considere como favorecida especialmente por las cortes de equidad. Los casos de New York—*Hardt* v. *Levy,* 25 N. Y. Supp. 248, 72 Hun. 225; *Gray* v. *Levy,* 26 id. 861, 75 Hun. 96—hacen referencia al caso primitivo de *Innes* v. *Lansing,* 7 Paige, 582. En ese caso el canciller demostró que la jurisdicción de equidad es de hecho estatutoria, pues en casos de insolvencia la ley convierte los bienes de una sociedad en comandita en un fondo especial para beneficio de todos los acreedores, el cual ha de distribuirse a *pro rata.* En otras palabras, ningún acreedor podría obtener una preferencia, y por tanto ninguno de los acreedores quedaba obligado a agotar sus remedios en ley. Los casos citados de New York demuestran asimismo que una sociedad en comandita puede fácilmente convertirse en una general y de ese modo no caer dentro de la excepción indicada por el canciller en el caso de Innez. Sería muy complicado y hasta cierto punto innecesario, que tratáramos de establecer la diferencia entre sociedades en los Estados Unidos y sociedades en Puerto Rico, pero no nos sentiríamos inclinados a equiparar las sociedades en comandita que aquí existen a las sociedades en comandita existentes en otras partes.

El *Asunto de Reisenberg,* 208 U. S. 109–10, para los fines de este procedimiento, decide únicamente que un demandado puede renunciar la defensa contra un remedio legal por no haberla levantado prontamente. Pero el caso de *Hollins* v. *Brierfield C. & I. Co.,* 150 U. S. 371–80, muestra claramente que la defensa contra un remedio legal puede ser utilizada siempre si es establecida al tiempo de presentarse la solicitud sobre nombramiento de un administrador; y en cuanto a haber sido levantada en tiempo esa defensa, no hay duda alguna en este caso.

No podemos convenir con los interventores en que el caso

de *Smith* v. *Superior Court,* 97 Cal. 348, esté falto de autoridad. No sólo son sus hechos muy parecidos al presente caso sino que el artículo 182 antes mencionado, sigue sustancial, si no literalmente, al estatuto de California. Que tenía aún carácter de autoridad en 1909, está evidenciado por el caso de *First National Bank* v. *Superior Court,* 12 Cal. App. 343, en el cual se reestablece la doctrina del caso de Smith. Ambos casos resuelven que un remedio legal no queda cambiado en un remedio en equidad por razón de la insolvencia del demandado, y que esta es la ley general queda demostrado por las citas que más adelante haremos.

El peticionario tenía interés bastante para defenderse y aún para intervenir. Las cortes de equidad, creemos, oirán siempre a un acreedor, cuando el litigio sea sólo entre meros acreedores sin garantía. En otras palabras, el acreedor Schluter tenía tanto derecho a ser oído en equidad como los demandantes. Si había alguna duda respecto al derecho de un acreedor contractual, queda en pie el hecho de que el peticionario era un socio y fué expresamente hecho parte demandada. No vemos inconsistencia alguna en que haga su reclamación como acreedor, especialmente cuando él era sólo un socio industrial sin responsabilidad alguna por las deudas.

Convenimos con los interventores en que el nombramiento de un administrador descansa en la sana discreción de la corte pero esto es siempre que la jurisdicción haya sido invocada en forma adecuada. En verdad, dudamos si en este caso, suponiendo que haya habido el cumplimiento formal de los requisitos de la jurisdicción de equidad, la situación justifica claramente el nombramiento de un administrador. Tenemos un Código de Comercio que es bastante explícito en sus disposiciones sobre liquidación de una sociedad disuelta, y no hay alegación alguna de que los socios, que son también los liquidadores de acuerdo con las cláusulas de la sociedad, sean incompetentes o de que deban ser privados de la administración. Si entendemos bien las autoridades, parte de

la idea fundamental en la no intervención de equidad es que el deudor debe ser permitido manejar sus propios bienes y arreglar sus propias deudas mientras no se demuestre una poderosa razón que justifique lo contrario.   El mero hecho de que alguno de los socios esté conforme en poner los asuntos en manos de un administrador no impedirá que los demás socios y acreedores se opongan e insistan en que los negocios de la sociedad sean liquidados, cuando, como en este caso, el contrato de sociedad había expirado sin ser formalmente renovado ni prorrogado.

No pondremos en duda que hubo en este caso una controversia, a pesar del hecho de que el título de la acción y las actuaciones de los demandantes tendentes a que se continuaran los negocios parecen demostrar hasta cierto punto una intención distinta.   En otras palabras, los interventores estaban deseosos de continuar los negocios del establecimiento litográfico como una empresa viviente.   Se menciona la guerra y los precios ruinosos, pero ni los demandantes ni nosotros tenemos idea de cuándo habrán de ser éstos mejores.   Los precios son elevados en Puerto Rico como en todas partes, pero la isla está próspera; y los demandantes no nos demuestran que alguna otra época habrá de ser mejor para hacer la realización del activo de la demandada.   Parece que la corte inferior mediante su orden tenía la idea de continuar los negocios de la demandada indefinidamente, pero ni las alegaciones ni ningún hecho conocido por nosotros justifican tal acción.   La demanda en este caso carecía peculiarmente de toda alegación de la cual la corte pudiera formar una idea exacta del activo y pasivo de la demandante o de la naturaleza de sus bienes, a excepción de la alegación de que es una imprenta moderna que publica un periódico importante.   No se demuestra razón alguna salvo la voluntad de los demandantes, para que no se arreglen los asuntos de la demandada Pérez Moris, Lynn y Compañía.

Los interventores también nos dicen que la ley sobre ad-

ministración de sociedades es progresiva y las cortes deben ser liberales, y se nos cita con especialidad el Volumen 30, Harvard Law Review, 273–78, 289, en que se hace una revisión del caso de Thompson's Receivership, 44 Pa. Co. Ct. 518. Una persona con un activo de alrededor de $70,000,000, consistente en su mayor parte en terreros, y un pasivo de $22,000,000 de los cuales $15,000,000 estaban garantizados y $7,000,000 no lo estaban, se encontraba en una difícil situación financiera por no tener dinero a mano para cubrir sus obligaciones. Dos de los acreedores sin garantía entablaron acción solicitando un administrador, alegando los hechos anteriores, y además que si los acreedores con garantía ejecutaban sus reclamaciones contra la propiedad, los acreedores sin garantía no podrían ser pagados; mientras que, si los acreedores con garantía esperaban algún tiempo, probablemente todos cobrarían. No tenemos que discutir al autor de la revisión que el principio fundamental del nombramiento de un administrador para una compañía de ferrocarriles en estado de insolvencia no puede ser sustancialmente distinto del principio de tal nombramiento en el caso de la insolvencia de cualquier otro deudor. Cuando menos, sin embargo, el nombramiento, tratándose de ferrocarriles se ha convertido en el uso establecido de las cortes de equidad, debido grandemente a la aplicación de la máxima *salus populi est suprema lex*. Parece que las cortes inferiores del país, al nombrar administradores para las centrales, lo han hecho aplicando liberalmente esa máxima, cuyo alcance puede difícilmente extenderse hasta abarcar los hechos del presente caso, suponiendo, sin resolverlo, que tal extensión fuera propia. En Puerto Rico la teoría normal es que la liquidación sea hecha por los socios. Aquí, como en los Estados Unidos, un acreedor diligente, excepción hecha de lo que dispone la ley de quiebra, puede obtener una preferencia. Si la legislatura cree propio poner a todos los acreedores en todo tiempo al mismo nivel, tiene un derecho innegable a hacerlo; pero las

cortes no. Suponiendo que el caso de la administración Thompson estuviera basado en principios sanos (no ha sido revisado por la corte más alta del Estado) tiene ciertos elementos que no existen aquí. Los demandantes en aquel caso alegaron hechos indicativos de una gran probabilidad de que la situación podría aliviarse con el tiempo, y también de que de otro modo perderían totalmente sus reclamaciones,—casi equivalentes, si es que no son más amplios, a la alegación de que los demandantes no tenían remedio alguno legal. Como hemos demostrado, aquí no se han establecido hechos en los cuales pueda basarse una conclusión definida.

Una de las dudas en favor de los interventores en este caso es que uno de los acreedores y varios de los socios convinieron sobre la intervención de la corte de equidad, pero este convenio no puede prevalecer contra la objeción de las partes que tienen derecho a insistir en que la ley siga su debido curso.

El peticionario alegó que de acuerdo con la equidad, la regla establecida era que los demandantes debían agotar su remedio en ley, y las autoridades lo sostienen. High on Receivers, párs. 339, 403; *Hollins* v. *Brierfield, C. & I. Co.,* 150 U. S. 371; *Smith* v. *Superior Court,* 97 Cal. 348; *Minkler* v. *United States Sheep Co.,* 33 L. R. A., y nota; *Ziska* v. *Ziska,* 23 L. R. A. (N. S.) 1, y notas, págs. 46, 80, 88, 111.

La orden nombrando un administrador debe ser anulada.

*Anulada la resolución y orden de 8 y 10 de diciembre de 1917, recurridas.*

Jueces concurrentes: Sres. Asociados del Toro y Hutchison.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron.