FIFTH AVENUE BANK, Respondent, *v.* JAMES B. COLGATE, Impleaded, etc., Appellant.

THE IMPORTERS AND TRADERS' BANK OF NEW YORK, Respondent, *v.* THE SAME, Appellant.

*Court of Appeals, June 3, 1890.*

1. *Partnership. Limited.*—The provisions of the statute permitting a renewal or continuance of a limited partnership do not require a statement that the original contribution of the special partner is unimpaired, nor is it necessary that such shall be the fact.

2. *Same.*—The renewal and continuance of such partnership operates as an extension, and is, in practical effect, the same as though such time had been embraced within the terms of the original formation.

3. *Same.*—The impairment of the capital without the fault of the special partner, where he was ignorant thereof and acted in good faith, does not make him liable as a general partner.

Appeals from judgments of the general term of the superior court of the city of New York, overruling defendant's exceptions and directing judgments for the plaintiffs.

The first action was brought upon two promissory notes made by Humphrey & Co., in October and December, 1882, amounting to $11,958.57. The second action was brought upon six promissory notes made by Humphrey & Co., in September, 1882, amounting to $35,882.16.

The alleged defence of the defendant, Colgate, was that he was a special partner of the firm of which the other defendants, Theodore F. Humphrey, James Humphrey and Correl Humphrey, were general partners. This firm was formed for a term commencing on March 11, 1874, and terminating February 28, 1877, and Colgate as special partner contributed to it $100,000. At its termination it was renewed or continued for a further term ending on February 28, 1882, and on February 18, 1882, a certificate was made by all the parties to it and an affidavit by one of the general partners for the further renewal or continuance of the partnership until February 28, 1885. In February, 1883, the firm failed and made an assignment for the benefit of its creditors. The last mentioned certificate contained the following provision:

"*Fourth.* The amount of capital which the said James B. Colgate, the said special partner, heretofore contributed to the common stock of the said copartnership is the sum of one hundred thousand dollars ($100,000), in cash, and the said capital stock of the said special partner remains in the said limited partnership wholly unimpaired, and the said amount, namely one hundred thousand dollars ($100,000), has been contributed by the said special partner to the common stock of the renewed and continued partnership."

And the accompanying affidavit of the general partner
35

stated, " that the sum of one hundred thousand dollars specified in the said certificate to have been contributed by James B. Colgate, the special partner therein named, as capital to the common stock of the said partnership, has been heretofore actually and in good faith paid in cash as capital to the common stock of the said copartnership, and remains in the said limited partnership wholly unimpaired, and the said amount, namely, one hundred thousand dollars, has been contributed by the said special partner to the common stock of the renewed and continued partnership." The defendant Colgate alone defended. The plaintiffs recovered.

*William Allen Butler*, for appellant.

*John E. Parsons*, for respondents.

BRADLEY, J.—The question presented is whether the defendant Colgate, as a special partner in a limited partnership, had protection against liability. Without the aid of the statute upon the subject, there was no relief for him against the responsibilities of a general partner. And to render it available as an exemption from liability, compliance with the provisions of the statute was essential in the formation of the limited partnership and in its renewal or continuance.

The view of the trial court upon the evidence was that it was legally and regularly formed and the contribution of $100,000 by Colgate duly made, which afforded to him the rights of a special partner, and that the first renewal was effectual; but that the statement in the certificate for the further continuance made in February, 1882, to the effect that the special capital remained wholly unimpaired was false, inasmuch as the firm was then insolvent, and for that reason the defendant was liable as a general partner. If the solvency of the firm was essential to a renewal or continuance of the limited partnership and to the exemption of the special

partner from liability as a general partner, or if it was necessary for that purpose to embrace in the certificate a statement truly made of the then actual condition of such capital, the recovery must be sustained. The conclusion was fairly required that the firm was then insolvent in fact, although it did not so appear by the books of the firm or by any information which the special partner had obtained from the balance sheets furnished him or otherwise.

The question becomes one of construction of the statute, which provides that the certificate of formation shall contain: 1, the name of the firm under which such partnership is to be conducted; 2, the general nature of the business intended to be transacted; 3, the names of all the general and special partners interested therein, distinguishing which are general and which are special partners, and their respective places of residence; 4, the amount of capital which each special partner shall have contributed to the common stock; 5, the period at which the partnership is to commence and the period at which it will terminate. 2 R. S. 764, § 4. The certificate shall be acknowledged, certified, filed and recorded. Id. § 6. And with it shall be filed an affidavit of one of the general partners stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash. Id. 765, § 7. And it is further provided that: " No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners." Id. § 8.

Then follows provision for publication of notice. Id. § 9. Thus far the provisions of the statute apparently have relation to the formation of a limited partnership. It is further provided that " every renewal or continuance of such part-

nership beyond the time originally fixed for its duration shall be certified, acknowledged and recorded, and an affidavit of a general partner be made and filed and notice given in the manner herein required for its original formation; and every such partnership which shall be otherwise renewed or continued shall be deemed a general partnership." Id. § 11.

This is the only provision for the renewal or continuance, and in it must be found whatever is essential to the extension of the existence of the partnership beyond the period originally given to it. The evidence of the renewal or continuance must be furnished in the same manner as that of its formation. The same formality must be observed. And because the last mentioned section does not contain within itself the requisites of the certificate and affidavit, reference must be had to §§ 4 and 7, in which appears the manner of the formation so far as relates to the certificate and affidavit. The provisions there must be followed in the renewal or continuance. The only thing essential to be considered here has relation to the special capital. It is provided in § 4 that the certificate shall contain a statement of the amount of capital which the special partner shall have contributed, and in § 7, that it shall appear by the affidavit that the amount so specified in the certificate has been actually and in good faith paid in cash.

The inquiry arises whether the statement in the certificate and affidavit, or in either of them, that the special capital remained unimpaired, was essential to the renewal or continuance of the limited partnership, or whether in fact such condition of the capital was necessary to effectually accomplish it. It is not so expressed in the terms of the statute, nor is it necessarily within its import. The manner in which the renewal is to be represented is that required to form the partnership originally.

The evidence of the latter is in the certificate, affidavit and proof of publication of notice, all of record. The orig-

inal certificate states the amount of capital which has been contributed by the special partner to the common stock, and the affidavit declares that the amount so certified has been in good faith paid in cash. The repetition of those statements in the certificate and affidavit of renewal or continuance, would, in that respect, seem to be a literal compliance with the statute, at least in form. In that sense the manner of doing it was the same as, or like, that provided for the creation of the partnership; and in that view no statement of the condition of the capital at the time of renewal or continuance would be deemed essential. But it is contended on the part of the plaintiffs that something must appear in the papers required for the continuance, to show that the capital is then unimpaired, else the requirement of the certificate and affidavit is in that respect useless, and can serve no beneficial purpose by way of information to the then and future creditors of the firm, or those dealing with it. The purpose of this provision of the statute is not that a new partnership be created, but that one already existing may be continued; that its life may at the option of the partners be prolonged. No new capital is to be contributed by the special partner. His right and relation as such, so far as they are dependent upon capital, are supported by the contribution made by him in the outset. There may be reasons for the denial of the right to renew or continue the partnership, unless the capital remains intact and unless the evidence of it be furnished by the record required to be made of the renewal, and the contrary may not be wholly without the claim of rational contention. But which view has the support of the better reason or would be productive of the better rule applicable to it under all circumstances, is not now the subject of consideration further than it may have a bearing upon the question of construction of the statute. If it is not required by the statute that the fact be made to appear by them, the statement in the certificate and affidavit that the capital remained unimpaired would seem to have been

surplusage, and the fact that it was not so, was unimportant for the purposes of the question here, unless the effectual renewal or continuance of the limited partnership was dependent upon the capital then so remaining. .

It may be observed that the provisions of § 8 declaring the effect of any false statement relates only to the certificate and affidavit made on the original formation of the partnership, and that there seems to be no provision of that character applicable to the proceedings taken for the renewal or continuance. But whatever the statute directs to be done is essential to accomplish it without reference to the existence or want of any penal provision, as all the rights and privileges qualifying the obligations and liabilities incident to a general partnership according to the common law or law merchant are wholly derived from the statute, which, for their support, must be substantially, in all respects, observed. Haviland *v.* Chace, 39 Barb. 283 ; Sharp *v.* Hutchinson, 100 N. Y. 533. And this in the formation of the partnership is not satisfied by the sufficiency of the certificate and affidavit with the requisite notice, but the essential facts upon which they purport to be founded must exist and be truly stated in them to give efficiency to the statutory partnership. Van Ingen *v.* Whitman, 62 N. Y. 513 ; Durant *v.* Abendroth, 69 Id. 148.

The only provision for the contribution of capital by the special partner is found in § 2, which provides that it be made " in actual cash." This has relation to the formation of the partnership, and contribution of capital at any other time or during its continuance is not only provided for, but by § 12 it is declared that every alteration " in the capital or shares thereof contributed, held or owned, or to be contributed, held or owned by any of the special partners," shall be deemed a dissolution of the partnership. The contribution of capital, therefore, by which the interest of the special partner is represented during the time of the continuance of the partnership is unchangeably fixed by that made on its

formation.  Lineweaver *v.* Slagle, 4 Eastern R. 467.  And this capital is guarded against the act of the special partner by statutory inhibition of its withdrawal, § 15, and by the penalty if it be so withdrawn by him, wholly or partially, during the continuance of the partnership, that his relation and protection as such ceases, and he becomes a general partner.  Bulkley *v.* Marks, 15 Abb. 454; Beers *v.* Reynolds, 11 N. Y. 67.

The renewal or continuance provided for operates as an extension for the designated period, a mere continuance of the life for that time of the originally formed partnership ; and in practical effect is the same as if such time had been embraced within the term of the original formation.  Troubat on Lim. Part., § 122.  This was evidently the purpose of the statute, and the renewal or continuance so far as respects the reference to the special capital has relation only to that which was originally contributed; and the proceedings had to extend the time of existence is assurance that nothing has been done to defeat the right of renewal and of the protection of the special partner as such.  If, however, it be requisite to a renewal or continuance that it be made to appear in the certificate and affidavit that the capital remains unimpaired, it follows that unless the capital so remain the existence of the partnership cannot be extended.  The consequence of such requirement to protect the special partner against the liability of a general partner would render it imprudent for him to consent to renew or to permit the business to proceed, but his safety would be only in an immediate liquidation.  The books of the firm would not necessarily afford him accurate or full information of its actual financial condition.  Nor would the appearances of the ability of the debtors of the firm to pay be any protecting information, if it turned out that they were at the time insolvent. While he may examine into the state and progress of the partnership concerns, and may " negotiate sales, purchases and other business," subject to the approval of a general part-

ner, he shall not except as so provided transact any business on account of the partnership, nor be employed for that purpose as agent or otherwise, without being subjected to the liabilities of a general partner. 2 R. S. 766, § 17, as amended by Laws 1857, chap. 414. He, therefore, must rely mainly upon the information he may obtain from the books and the general partners about the condition of the firm at any time during its existence. The situation in that respect of a special partner may be well illustrated by what appears in this case. He had nothing to do with the business. He was furnished annually with balance sheets taken from the books, showing what purported and as then appeared to be the financial condition of the firm. The statement furnished him near the time of the renewal or about the 1st of March, 1882, represented the firm as solvent with a balance of over $250,000 to the credit of the general and special partners. This was the situation appearing on the books. The special partner had done nothing to impair the capital. The deficiency in value of the bills receivable and accounts among the assets of the firm placed it in a state of insolvency. These facts, of themselves, are of no moment. They are referred to by way of illustration of the embarrassment to a special partner, which may attend the continuance of a partnership beyond the term originally designated if the capital must remain unimpaired to permit it, and as bearing, if any they may have, upon the construction of the statute. It is urged that the certificate and affidavit required to renew or continue must have been intended to speak of the situation as of the time they are made, and that the statutory adoption of the manner of certifying and verifying the original formation as the method of doing it, must be taken as applicable *mutatis mutandis* to the renewal or continuance. This may be properly so in the formality of distinguishing it from the creation of the partnership. But a substantial difference would be a departure from the manner prescribed. It is no more essential to add anything not within the pro-

visions of the statute than it is permissible to omit anything within its provisions. The manner as directed of certifying and verifying imports substantial uniformity with that required by §§ 4 and 7, and not necessarily anything more. Troubat, § 110. If the purpose of the requirement to accomplish the continuance was to inform the future creditors of the firm, or those dealing with it, of its then financial condition, the legislature signally failed in the language employed to express such intent. The only reference made to capital in the statute is that relating to its contribution and amount as of the time of the formation. And the consequences upon it of the hazards of the trade to which the capital may have been exposed in the business of the partnership does not seem by the statute to be made the subject of information to be furnished by the certificate and affidavit essential to the continuance, and they in not containing any reference to the then condition of the capital cannot operate as a fraud upon the creditors any more than that to which the creditors might be subjected in the midst of an unexpired term.

If it had been within the legislative purpose that such further information be furnished, it may, and seems that it would, in some manner have been so indicated in the statute. And to say that it was within its contemplation that the papers made to continue the partnership must import that the special capital remains unimpaired, and if not so no continuance of it can be effectually had, requires an implication not warranted by any language of the statute.

In Metropolitan National Bank *v.* Sirret, 97 N. Y. 320, no statement to that effect was contained in the certificate or affidavit of renewal or continuance, and the court held that the certificate stated all the facts required to be stated by the fourth section of the statute. The court there did not consider the question whether it was essential to a renewal or continuance that the capital should then remain unimpaired. It may be assumed that the continuance as well as its former

existence must have for its support a valid formation of the partnership. It takes from its creation the life which sustains its properly continued existence. It is argued that the statute has within its purpose an unexpressed meaning which should govern its construction. Upon that subject it may be said that when there is obscurity in the words used, or if the language employed does not completely express the evident purpose of a statute, the legislative intent may be sought for in its title or in the cause or necessity for making it, and effect given as within its meaning, although not within the letter of the statute. People *v.* Utica Ins. Co., 15 Johns. 358, 380. But the intention of the framers must first be sought for in the language used, and if that is free from ambiguity and has a plain meaning it will be presumed to express their intent, and there is no occasion to go farther for interpretation. The language of the statute should be given its natural and obvious import. The court cannot correct errors or cure supposed defects in legislation. McCluskey *v.* Cromwell, 11 N. Y. 593 ; Johnson *v.* H. R. R. R. Co., 49 Id. 455, 462 ; Benton *v.* Wickwire, 54 Id. 226 ; Bell *v.* Mayor, 105 Id. 144.

There does not seem to be anything in the statute in question, or in its apparent purpose, to warrant the conclusion that the intent of its makers was to deny to a partnership constituted in pursuance of it the right to continue its existence unless the capital remained undiminished, or that its condition, other than by reference to the capital originally contributed, must essentially be certified or represented in the papers upon which the continuance is founded. While such restriction might wisely be applied to stay speculation on exhausted capital, it may be seen that such a rule might have the effect to force a partnership into liquidation at much sacrifice as a precautionary means for the protection of a special partner. In some of the states the statutes require a statement to be made on renewal of the partnership of the condition of the capital, and in many of them the statutes are

similar in that respect to ours. The right to form limited partnerships was first introduced into this state by chap. 244 of Laws of 1822, which required no certificate, but provided for a registry of substantially the requisites of the certificate now required, and following in that connection was the provision that "all renewals or continuances of partnerships shall be registered in like manner." § 7. And by the next section it was provided that it should be the duty of a general partner at the time of registering to file an affidavit made by him of the actual *bona fide* advance of the sum by the special partner according to the registry of the amount of the same. § 8. The main features there were substantially the same as they are in the Revised Statutes. But the provisions of the act of 1822 may be so construed as not to have required an affidavit on renewal or continuance. In the present statute the words "certified, acknowledged and recorded and an affidavit of a general partner be made and filed, and notice given in the manner herein required for its original formation," are substituted for the method provided in that respect by the prior act. Then, as now, there was no qualification of the right to renew or continue founded upon the remaining condition of the special capital provided by the statute. But it was then given the same protection as now against interference of the special partner with it.

It has been suggested that, in the view taken here, an affidavit could serve no important purpose on renewal, as it would furnish no information not before given by that filed on the formation, and therefore the appearance in it of something further was contemplated. While it is not seen how the implication contended for can arise from that cause, it may be assumed that the certification and verification as directed might be treated as assurance that the capital originally contributed or any part of it had not been withdrawn by the special partner, since those are by the statute made the essential facts to support the continuance of the partnership, and the only ones in respect to the capital provided for

by the statute. There is nothing in the revisers' notes to indicate any design to produce any substantial modification in that respect of the provisions of the prior statute, 3 R. S. 2d Ed. 608, which may properly be referred to in construing the revision. McDonald *v.* Hovey, 110 U. S. 619; 100 Id. 508; Waterford & Whitehall Turnpike *v.* People, 9 Barb. 161. This system of partnership was at an early day adopted in continental Europe, and became part of the modern civil law. And Chancellor Kent informs us that the provisions of our statute upon this subject "have been taken in most of the essential points from the French regulations in the Commercial Code; and it is the first instance in the history of the legislation of New York that the statute law of any other country than that of Great Britain has been closely imitated and adopted." 3 Kent's Com. 36. By reference to the French Code it is seen that the continuance of a partnership beyond its prior designated term required authentication according to the same forms as for its creation, and they were essentially to be observed for its accomplishment. The policy of this law was to bring into trade and commerce funds of those not inclined to engage in that business, who were disposed to furnish capital upon such limited liability, with a view to the share of profits which might be expected to result to them from its use. And the fact that the law has been in operation in this state for nearly seventy years, and has been adopted in most if not all the states of the Union, indicates that it is deemed to have its advantages, and that it serves a purpose consistent with the public welfare. It is entitled to a reasonable construction for the protection of the special partners as well as others that the statute in its design may be rendered effectual. Riper *v.* Poppenhausen, 43 N. Y. 73; Manhattan Co. *v.* Laimbeer, 108 Id. 578, 582.

There seems to be but very little adjudication bearing upon the question under consideration. In Louisiana the statute provides that "the prorogation which may be agreed

upon between the parties shall be made and proved in the same manner as the contract of partnership itself." In Arnold *v.* Danziger, 30 Fed. Rep. 898, the question arose whether the prorogation which the partners sought to make was effectual to continue the existing partnership, inasmuch as the special capital had been impaired and the general partner was insolvent. The action was there by creditors of the firm, who alleged that they were induced by the renewal of the partnership to give it credit; and the relief sought was that the special partner should advance sufficient to make up the amount originally contributed by him. The court held that the renewal or continuance was not the creation of a new partnership, but an extension of the one before then existing; and that the special partner had hazarded only the amount contributed and was not liable to do more. The determination of that case was to the effect that the diminution or impairment of the capital was not in the way of the renewal or continuance of the partnership.

In Haddock *v.* Grinnell Mfg. Corp'n, 109 Penn. St. 375; 2 East. Rep. 604, there was no new certificate making any reference to the special capital, but the affidavit stated the amount originally contributed, and that it remained in the common stock. While it appeared by the certificate and affidavit made on the formation that the amount had been paid in cash, there was nothing in either the agreement for renewal or the affidavit then made that the contribution was made in cash. The court held that the affidavit was insufficient to support the continuance of the limited partnership, and that the liability of the special partner was that of a general partner, for the reason that it was not stated in what shape the capital remained, whether " in cash, in merchandise," or was represented by " bad debts, a margin in stock or speculation in real estate," and added the remark that " the creditors are entitled to know when the partnership, is renewed, whether the special capital is a reality or a myth."

It may be observed that while the provision of the Penn-

sylvania statute relating to renewal or continuance is the same in that respect as in this state, it is different in relation to the nature of capital furnished. There the contribution may be made in cash, goods or merchandise, and when made in goods, their nature and value shall be fully set forth in the certificate. The view expressed in the opinion in that case was to the effect that the affidavit should give as full information upon the renewal as upon the original formation, and that when renewed or continued the partnership must be in the same condition, so far as the special capital is concerned, as when orginally formed. While that view is not entirely in harmony with Metropolitan Natl. Bank *v.* Sirret, and is not adopted here, it is unnecessary to say of that case more than that it is distinguishable from the present one in the fact that the requisite certificate and affidavit within the meaning of the statute were not made for renewal, and upon that ground the decision there made was placed.

We think that the impairment of the capital without the fault of the special partner did not deny the right to renew or continue the partnership, nor is the statement of the condition of the special capital in the certificate or affidavit essential to effect a renewal. It follows that those instruments contained all that was required by the statute to accomplish such continuation, and whatever was in excess of it was, for that purpose, surplusage. What might be the consequences of such additional statement in the certificate as bearing upon the liability of the special partner to creditors who have been induced by it to give credit to the firm, is a question not here for consideration. Nor is the question considered whether or not the trial court was right in holding, as matter of law, that the contribution of capital was duly and in good faith made by the special partner in the formation of the partnership.

These views lead to the conclusion that the judgments should be reversed and new trials granted, costs to abide the event.

All concur.