1201 SIXTH AVE. CORP., Respondent, *v.* ALTOR GRILL & RESTAURANT, INC., Appellant.

First Department, June 21, 1954.

*Harry Simon* of counsel (*Jerome I. Hyman* with him on the brief; *Harry Simon,* attorney), for appellant.

*Herbert J. Wallenstein* for respondent.

CALLAHAN, J.  By chapter 452 of the Laws of 1953, section 2 (subd. [c]) of the Business Rent Law (L. 1945, ch. 314, as amd.) was amended to grant a second 15% increase in emergency rents. The section, as amended in 1953, reads: " (c) ' Emergency rent.' The rent reserved or payable under any lease, agreement or tenancy of business space in force on June first, nineteen hundred forty-four, plus fifteen percentum of such rent, *except with respect to a tenant who, since January first, nineteen hundred forty-seven, has paid such emergency rent without an increase pursuant to any of the provisions of this act, and in any such case such emergency rent, plus fifteeen per centum*;  *  *  * " (Italicized matter being the 1953 amendment).

The question on this appeal is whether the amendment applied to leases fixing rent on a graduated scale.

The present lease provided for rent at the rate of $5,500 per annum from May 1, 1944, to April 30, 1946, and at the rate of $6,500 per annum from May 1, 1946, to April 30, 1948.  After the lease expired, and in October, 1948, the Supreme Court, on the landlord's application, fixed the tenant's rent at $7,200 a year based, we assume, on rents prevalent in the most nearby comparable business space in the same building or rental area or other satisfactory evidence (§ 13).

We note, therefore, that (1) the rent on June 1, 1944 (the freeze date as to business space not rented under graduated leases) was increased thereafter by the terms of the lease; and (2) in 1948 (after January 1, 1947) a further increase was granted without any 15% limitation, but for the full sum that rents in the vicinity would warrant.  Such neighboring rents could well include rents fixed in a free market.

We do not believe that the Legislature intended the amendment to section 2 (subd. [c]) to apply to graduated leases like the present. Such leases have been considered as exempt from the ordinary provisions in the rent laws for determining statutory rent (*Matter of 500 Fifth Avenue* [*Wise Shoe Co.*], 274 App. Div. 241, affd. 300 N. Y. 491). This distinction was said by this court to be due to the fact that the graduated lease could not fairly be submitted to the emergency rent formula, because the rent payable on the freeze date might not bear any relation to the rental value at the time. We pointed out there that the opposite sort of treatment was given to the two types of leases (graduated and nongraduated) in determining the rent to be paid upon expiration of the lease.

We need not rest on the force of precedent to establish the inapplicability of the amendment to graduated leases. In recommending the 1953 amendment the commission on rent controls reported to the Legislature as follows: '' 2. Some tenants have occupied rental space in business and commercial properties from the time that such space was subjected to rent and eviction regulation. The rents paid by such tenants were fixed at the rent level of 1943 or 1944, plus 15% which was declared to be the ' emergency rent ' to be paid during the period of the emergency. The occupants of such premises have enjoyed a period of unprecedented business boom. Landlords of these properties during the same period of time have been subjected to substantial increases of operating costs * * *. It is recommended, therefore, that so-called ' statutory ' tenants, i.e., tenants whose leases have expired and who continue in occupancy under the emergency statutes merely by paying the emergency rent, who have not volunteered to pay or whose landlords have refrained from compelling them to pay an increase in rent pursuant to appropriate provisions of the Emergency Acts, pay an increase in rent of 15% exceeding the amount of the emergency rent.'' (See N. Y. Legis. Doc., 1953, No. 43, pp. 19–20.)

This language clearly indicates that the commission was recommending legislation with respect to emergency rents that had been based on '' freeze day '' rents of June 1, 1944, and not emergency rents based on judicial awards depending on market conditions. It was the first class of emergency rents, where the tenant had paid only 15% over frozen rents, that was to get the second 15% increase. It does not seem to have been intended that where rent had been fixed by a court without limitation, except in the light of comparable rents in a free market, there

was to be a second increment. Here the judicial fixation occurred in October, 1948 (after January 1, 1947). Nevertheless, a further 15% has been added under the decisions of the lower court. It would appear that the trial court's interpretation would be the same, even if the tenant's rent had been fixed in 1952 or 1953 on the basis of comparable rents and market conditions then. Again a 15% increase would be added according to the rationale of the Special Term decision. We cannot agree that this was the legislative intent.

It is contended by the plaintiff that the 1954 amendment to section 2 (subd. [c]) (see L. 1954, ch. 447) was intended to remove ambiguity in the law, and that the word " such " was changed to " the " before the term " emergency rent " to clarify the intention to embrace all emergency rents, including those following graduated leases.

Again, we may receive assistance in construction by referring to the 1954 Report of the Temporary Commission on Rent Control (N. Y. Legis. Doc., 1954, No. 58). It points out that the purpose of the 1954 amendment was merely to make clear the intention to include cases where a second increase of less than 15% had been awarded so as to permit the second increase to be brought up to the full 15% level.

After a graduated lease expires, it is true that a rent is fixed which the statute refers to as an " emergency " rent. But we need not blindly assume that the amendments to section 2 (subd. [c]) were intended to give a second increase of 15% in every case where a rent is referred to as an emergency rent, including cases where the emergency rent was based on comparable rents in the market and without any relation to freeze day rents.

It happens that in the instant case the new rent of $8,380 per annum will amount to about the sum that would represent three 15% increases over the June 1, 1944, rent of $5,500. These figures tend to indicate that the tenant's case is not within the class that was required to sustain a second 15% increment.

It may be asked: what about graduated leases that currently expire? The statute says that the emergency rent shall be fixed after expiration by agreement, arbitration or the Supreme Court on the basis of comparable rents. Does this mean that if, and when, such fixation is had in the future, another 15% is to be added arbitrarily under section 2 (subd. [c])? Yet that would seem to be the result indicated by the decision under review. Such a situation may be avoided by holding, as we have

in the past, that graduated leases are in a class apart. "The [legislative] policy and reason behind both the variable rent and graduated scale exceptions would seem to be the same — to leave in force and effect * * * leases where the rent is not fixed for the entire term but is subject to variations which would make it unfair to take any one date as determining the emergency rent. * * * The purpose in both cases is to avoid making the rent payable on the freeze date controlling.'' (*King Arthur Restaurant* v. *London Terrace,* 273 App. Div. 233, 236.)

Our recent decision in *King Varick Corp.* v. *Omin* (283 App. Div. 544) in no way involved the applicability of subdivision (c) of section 2 and its amendments to graduated leases.

The judgment appealed from should be reversed and judgment awarded in favor of defendant in accordance with this opinion. Settle order.

Peck, P. J., Dore, Breitel and Bergan, JJ., concur.

Judgment unanimously reversed and judgment awarded in favor of the defendant in accordance with the opinion herein. Settle order on notice.