CHARIPO REALTY CORPORATION, Landlord, *v.* SAFEWAY STORES, INCORPORATED, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, September 12, 1955.

*Jacob Shapiro* for landlord.

*Charles J. Nager* for tenant.

WAHL, J. The tenant has since 1941 continuously occupied a store at 824 Third Avenue, Borough of Manhattan, in a building owned by the landlord. The original lease was for a term of five years from September 1, 1941, to August 31, 1946, at $325 per month. Upon its expiration, the parties extended the term for one year to August 31, 1947, but at a 15% increase to $373.75, the amount of the emergency rent as defined in the then effective Business Rent Law (L. 1945, ch. 314, as amd.). Upon the expiration of such renewal, the tenant continued in occupancy without a lease under the protection of the statute, paying $373.75 per month, until June 15, 1949, when the parties again entered into a renewal agreement for three years and three months from June 1, 1949, to August 31, 1952, but at an increase of slightly more than 20% to $450 per month. The new rent of $450 was fixed by written agreement pursuant to the authorization of what is now known as subdivision 3 of section 4. Since August 31, 1952, the tenant has continued in possession without a lease under the protection of the statute and paying $450 per month.

The landlord now claims that pursuant to the amendment by chapter 701 of the Laws of 1955, in effect July 1, 1955, to subdivision (c) of section 2 of the Business Rent Law, which defines "Emergency rent", it is entitled since July 1, 1955, to an increase of 15% above $450 to $517.50 per month. The landlord's contention is that paragraph (2), as added to subdivision (c) of section 2 by the 1955 law, requires that any tenant whose emergency rent has not been increased since January 1,

1950, by at least 15%, must pay an equalization increase of 15% above his emergency rent as of January 1, 1950.

The tenant claims that the amendment by the 1955 law is not applicable to it and that all it should pay is $450 per month, that the June 15, 1949, agreement fixing its rent at $450 was made pursuant to subdivision 3 of section 4, that section 4 permits the fixation of a reasonable rent in excess of the emergency rent by arbitration (subds. 1, 2), or the Supreme Court (subds. 1, 2, 4) or by written agreement (subd. 3), and that subdivision 6 of section 4 excludes any further increase in any other way, including the 1955 amendment to subdivision (c) of section 2.

Some weight must be given to the tenant's contention in view of subdivision 5 of section 4. That subdivision provides that " Any landlord who shall wilfully demand or accept a rent in excess of the emergency rent, or a rent fixed pursuant to section four of this act shall forfeit one succeeding month's rent." Since the landlord is prohibited from demanding or accepting rent in excess of either the emergency rent or the rent fixed pursuant to section 4, it is not unreasonable to say that the lesser of these two amounts is the maximum rent which may be collected from this tenant, and if the amendment to subdivision (c) of section 2 be construed to fix an amount greater than the sum of $450 fixed by agreement on July 15, 1949, pursuant to subdivision 3 of section 4, then $450 is the maximum which this landlord may demand or accept from this tenant.

This court is loathe to decide this important issue on such a technical statutory rationale. The amendment to subdivision (c) of section 2 involves a determination of public policy by the Legislature and that policy should be ascertained from the language of the amendment, if unambiguous (*Matter of Feickert* v. *McGoldrick,* 119 N. Y. S. 2d 301, and cases cited therein; *People* v. *Long Island R. R. Co.,* 194 N. Y. 130), or from extrinsic aids, if there is uncertainty as to its meaning (*Fifth Avenue Bank* v. *Colgate,* 120 N. Y. 381).

A reading of this new paragraph (2) of subdivision (c) of section 2 discloses an ambiguity of language requiring judicial inquiry into the legislative intent (*People ex rel. Twenty-Third St. R. R. Co.* v. *Commissioners of Taxes,* 95 N. Y. 554).

Clearly paragraph (2) of subdivision (c) of section 2 defines " Emergency rent " as " The rent fixed or established as provided in paragraph (1) of this subdivision " and that " with respect to any tenant who, since January first, nineteen hundred fifty, has paid the emergency rent so fixed or established " without an increase in excess of 15% " pursuant to any of the

provisions of this act '', the '' emergency rent shall be the rent so paid plus fifteen per centum.'' What is not so clear is what the Legislature means by the phrase '' has paid the emergency rent so fixed or established ''. Does the language mean the emergency rent first established on the basis of the June 1, 1944, rent plus 15%? Or does it mean the emergency rent as modified by the 1953 and 1954 amendments, which in effect increased the emergency rent first established by 15% thereof to a total of 132.25% of the June 1, 1944, rent?

When subdivision (c) of section 2 was amended in 1953 (L. 1953, ch. 452), so as to increase the emergency rent by 15%, the language used was interpreted by some courts to deny an increase to any case where any increase whatsoever was paid, whether obtained prior to January 1, 1947 (*D & R Realty Corp.* v. *Gluckman & Strauch,* 203 Misc. 1126) or after that date (*Plaza Jewelers* v. *Radcliffe Associates,* 127 N. Y. S. 2d 580; *Moises Cosio Corp.* v. *Finkelstein,* 208 Misc. 480). This was so stated by the State Temporary Commission to Study Rents and Rental Conditions, which thereupon proposed the 1954 amendment to make clear its intention to impose an equalization increase of 15%, but significantly making no criticism of the cases insofar as they ignored the date of January 1, 1947, with respect to when the increase was obtained. (N. Y. Legis. Doc., [1954] No. 58, p. 13.) The 1954 amendment accordingly changed the language of the 1953 amendment, so that where the 1953 amendment imposed the new 15% increase upon any tenant who '' has paid such emergency rent without an increase '', the 1954 amendment (L. 1954, ch. 447) imposed the new 15% increase upon any tenant who '' has paid the emergency rent first established without an increase in excess of fifteen per centum thereof ''. The 1954 report of the commission (*supra*) explained that it made this change in language to overcome the foregoing judicial interpretations of the 1953 amendment, because '' [t]he amendment, now proposed, is intended clearly to authorize the payment of a rent of 15% in excess of the original 15% first authorized or the difference between 15% and any percentage of increase between the amount paid after 1947 and 15%.''

The significance of the foregoing exposition is the use of almost the same language in the 1955 amendment. Where the 1953–1954 amendments imposed the new 15% increase upon any tenant who, since January 1, 1947, '' has paid the emergency rent first established without an increase in excess of fifteen per centum thereof '' (L. 1954, ch. 447), the 1955 amendment

imposes a 15% increase upon any tenant who, since January 1, 1950, " has paid the emergency rent so fixed or established without an increase in excess of fifteen per centum ".

The 1955 report of the commission states that it intends the new amendment to affect " only those who did not pay a similar increase granted in 1953 " and that it " is to be applied in the same manner as the one authorized in 1953. (See Legis. Doc., [1953] No. 43, pp. 19-20.) " (Report, State Temp. Comm. to Study Rents and Rental Conditions, N. Y. Legis. Doc., [1955] No. 73, p. 16.) Examination of the 1953 report, to which the 1955 report refers, clearly shows that the Legislature intended to impose this increase only upon tenants who are still paying the original emergency rent without an increase in excess of 15%. In interpreting the 1953 amendment in the light of the 1953 report, the Appellate Division, First Department, stated that the intention of the Legislature was to impose the new 15% increase only " with respect to emergency rents that had been based on ' freeze day ' rents of June 1, 1944, and not emergency rents based on judicial awards depending on market conditions " and that the 1954 amendment merely made it an equalization increase where such tenant paid an increase of less than 15% over such original emergency rent (*1201 Sixth Ave. Corp.* v. *Altor Grill & Restaurant,* 284 App. Div. 455, 457). The only substantive change now made by the 1955 Legislature in the new paragraph (2) is the date of January 1, 1950, instead of the date of January 1, 1947, in what is now paragraph (1).

In view of this identity of purpose between the 1955 enactment and the 1953 enactment (as clarified in 1954), this court believes the 1955 language of paragraph (2) should be interpreted to mean the same thing as the language of paragraph (1), except for the substitution of the date January 1, 1950, for January 1, 1947. Accordingly, this court holds that paragraph (2) of subdivision (c) of section 2 imposes an equalization increase of 15% above the emergency rent first established in paragraph (1) upon any tenant who since January 1, 1950, is not paying an increase of at least 15% above that original emergency rent.

The tenant's rent on June 1, 1944, was $325. Fifteen per cent thereof is $48.75, making its original emergency rent $373.75. Fifteen per cent of such original emergency rent is $56.07, making a total of $429.82. Since there is outstanding a valid agreement pursuant to subdivision 3 of section 4 fixing a reasonable rent of $450, which established a new emergency rent for

the space in excess of that to be fixed under the 1955 formula, the provisions of paragraph (2) of subdivision (c) of section 2 are inapplicable.

The parties hereto stipulated that pending the disposition of this summary proceeding the tenant shall pay a monthly rental of $450, such payment to be without prejudice to the rights of either the landlord or the tenant. The July payment of $450 having been made to the landlord, the only issue therefore is whether the landlord is entitled to an additional sum of $67.50 per month. I hold that the tenant is not obligated to pay this additional amount.

Hence, the tenant is entitled to a final order dismissing the petition on the merits.