Bernard **KLEBANOW** and George Lewis,
Plaintiffs,

v.

**NEW YORK PRODUCE EXCHANGE**,
New York Produce Exchange Clearing
Association, Merrill Lynch, Pierce, Fenner & Smith, Inc., Ira Haupt & Company, Morton Kamerman as Liquidating
Trustee for the Benefit of Ira Haupt &
Company, and others presently unknown to the Plaintiffs, Defendants.

United States District Court
S. D. New York.
Aug. 18, 1964.

Rosenman, Colin, Kaye, Petschek &
Freund, New York City, Max Freund,
Seymour D. Lewis and Ernest Gleit, New
York City, of counsel, for plaintiffs.

Holtzmann, Wise & Shepard, New York
City, Howard M. Holtzmann and William
B. Shealy, New York City, of counsel, for
defendant New York Produce Exchange.

Baer, Marks, Friedman & Berliner,
New York City, for defendant New York
Produce Exchange Clearing Ass'n.

Brown, Wood, Fuller, Caldwell & Ivey,
New York City, Louis B. Eten and Earl
J. McHugh, New York City, of counsel,
for defendant Merrill Lynch, Pierce, Fenner & Smith Inc.

TYLER, District Judge.

Defendants other than Morton Kamerman and Ira Haupt & Company
("Haupt") assail the legal sufficiency of
the complaint seeking treble damages for
alleged Sherman Act violations by defendants. The plaintiffs are limited partners of Haupt and, as such, they purport
to bring this suit on behalf of the partnership entity. The principal points
urged by defendants in support of their

motions to dismiss are that the complaint fails to sufficiently spell out the alleged offenses and, more importantly, that plaintiffs have no standing to prosecute this essentially derivative action on behalf of Haupt.

The complaint states that the brokerage firm of Haupt was organized as a limited partnership under the laws of New York State in 1960 for a period expiring on December 31, 1963. It is further stated that all the limited partners contributed "at least $4,000,000" to the capital of Haupt. Of this total amount, plaintiffs contributed $600,000.

Since December 31, 1963, when the partnership terminated in accordance with the provisions of the agreement, Haupt has been in liquidation. During the latter part of 1963, defendant Morton Kamerman was the sole managing partner of Haupt; since December 31 of that year he has been the sole liquidating trustee of Haupt pursuant to specific terms of the original partnership agreement of April 1, 1960.

It is alleged that on or about November 20, 1963, Haupt appeared to be unable to meet its obligations as they matured. Thereafter, on November 25, 1963, Kamerman and the other general partners of Haupt entered into a contract ("contract of November 25, 1963") with various New York City banks, alleged creditors of Haupt, and with "the Stock Exchange".[1] On the same day, Kamerman and the other general partners of Haupt each executed a power of attorney to an employee of the Stock Exchange as a representative of the latter Exchange and the aforesaid creditor banks. Under these powers of attorney, as subsequently amended, and the contract of November 25, 1963, Kamerman and the other general partners "divested" themselves "of the power to do any act or thing on behalf of Haupt". Kamerman also divested himself of the right and power to act as liquidating trustee of Haupt.

It is claimed further that since November 25, 1963, the attorney in fact representing the Stock Exchange and creditor banks has "exercised full control over the assets and business of Haupt and (has) been liquidating same".

Plaintiffs, according to their complaint, are obliged to prosecute this action not only because Kamerman and the other general partners have effectively divested themselves of power to act on behalf of Haupt, but also because the aforementioned banks and Stock Exchange have a substantial identity of interests with defendants in this case except, of course, Haupt and Kamerman. Specifically, with regard to the latter reason, it is stated that defendant Merrill Lynch, Pierce, Fenner & Smith Inc. and "possible additional defendants" are members of the Stock Exchange and also of the defendant New York Produce Exchange. Similarly, it is claimed that members of the Board of Governors of the Stock Exchange are partners in firms which have other partners serving on the boards of the Produce Exchange and defendant New York Produce Exchange Clearing Association.

Significant provisions of the partnership agreement of April 10, 1960 are incorporated in the complaint. Among these, of course, are standard requirements that limited partners be paid in liquidation their capital contributions, minimum profit participations and interest from assets of Haupt or, failing sufficient assets, from the assets of the individual general partners.

Finally, there are allegations that defendants, in or before November, 1963, entered into an illegal conspiracy to monopolize trade in, and to fix the price of, cottonseed oil, which conspiracy caused monetary damage to Haupt in the sum of "at least $11,000,000."; and that the Stock Exchange will not permit either Haupt or defendant Kamerman to prosecute this claim.

1. Presumably, although the complaint doesn't make this clear, the New York Stock Exchange.

At least superficially, if not essentially, the question presented by the motions to dismiss is whether limited partners of a New York partnership in liquidation may bring a derivative action where the general partners or managing partner have divested themselves of power and authority to act and where the assignees of the general partners in control of the firm assets have conflicting interests in and with the principal defendants and thus will not permit the firm or its partners to prosecute such an action.

Although the New York limited partnership law has existed with very few substantive changes since 1822, it does not appear that the New York appellate courts, at least, have been squarely confronted with this question.

Section 115 of the New York Partnership Law, McKinney's Consol. Laws, c. 39 provides that:

"A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."

Defendants, naturally enough, urge that Section 115 standing alone precludes the plaintiffs from bringing this claim. Plaintiffs attempt to skirt Section 115 by urging that its plain language does not precisely fit the situation here where it is alleged that the suit is one of a derivative nature—i. e. it is not a claim of which the limited partners are the immediate or direct beneficiaries—and where it is pleaded that the general partners have divested themselves of all power and responsibility to act on behalf of the firm. For reasons to be developed hereinafter, I conclude that the defendants are correct, but not strictly for the reasons which they advance, in urging that this complaint will not lie.

There is some support in logic, however, for the plaintiffs' argument that Section 115 of the Partnership Law does not precisely, and without more, fit the circumstances here. Then, too, it is initially tempting to lean toward the derivative action theory espoused by plaintiffs, because, for example, it might be argued that this would be one way of implementing the obvious policy of the New York Partnership Law to encourage and protect contributions of capital by limited partners to commercial partnership entities. See, for example, Ruzicka v. Rager, 305 N.Y. 191, 197–198, 111 N.E.2d 878, 39 A.L.R.2d 288 (1953); Fifth Avenue Bank v. Colgate, 120 N.Y. 381, 396, 24 N.E. 799, 8 L.R.A. 712 (1890).

But comprehensive study of the limited partnership provisions of the New York Partnership Law and some of the decisions construing those provisions since they came into being in 1822 compel the conclusion that the derivative analogy is inapposite.

Limited partnerships, of course, were unknown to the common law; thus, like corporations, they are "creatures of statute". Lanier v. Bowdoin, 282 N.Y. 32, 38, 24 N.E.2d 732 (1939). The statutory framework of a limited partnership, in accordance with both the New York statute and the provisions of the Uniform Partnership Law, is such as to make it clear that a limited partner is a creditor and not an owner of the firm or its assets. New York Partnership Law, § 99(2); Harris v. Murray, 28 N.Y. 574 (1863); Alley v. Clark, 71 F.Supp. 521, 526 (E.D. N.Y.1947).

Since I can find no persuasive authority in New York indicating that the courts of this state have abandoned the consistent theory that limited partners are creditors rather than owners of the partnership assets, it would seem to follow, as defendants argue, that plaintiffs are barred from asserting this claim by the rule that a creditor cannot bring a treble damage anti-trust claim against alleged third-party conspirators who assertedly have combined to the monetary damage of the debtor firm.

See, for example, Loeb v. Eastman Kodak Co., 183 F. 704 (3d Cir. 1910); Gerli v. Silk Association of America, 36 F.2d 959 (S.D.N.Y.1929).[2]

Since those cases enunciating the latter rule as have been called to my attention admittedly do not turn on essentially similar facts to those pleaded in this complaint, I do not intend to rest this decision here. Thus, at least one other significant consideration casts doubt on the derivative theory here urged by plaintiffs. In Rossmore v. Commissioner of Internal Revenue, 76 F.2d 520, 521 (2d Cir. 1935), Judge Learned Hand, writing after the adoption of the Uniform Partnership Law, pointed out that in this country and certainly in the State of New York the civil law theory of a partnership as a juristic entity has never been adopted. What he pointed out in 1935 seems as apt almost thirty years later. If this is so, then it would follow that, absent a juristic entity from and for which a claim or right as asserted here would derive, plaintiffs, if they are to sue at all, must do so in their capacity as limited partners, no matter how vehemently they protest to the contrary. And, to follow this argument through, plaintiffs then would be met with the plain language of Section 115 of the Partnership Law precluding them from suing as such.

If the foregoing considerations be deemed too theoretical, it may then be appropriate to consider whether or not the plaintiffs are completely without a remedy if they are not entitled to prevail here. To me, it is pertinent that Section 99 of the New York Partnership Law provides, *inter alia*, that a limited partner has the right to have "dissolution and winding up by decree of court." One reasonable and practical interpretation of the core allegations of this complaint is that plaintiffs in effect are voicing dissatisfaction with the contractual and other methods employed in the winding up and liquidation of Haupt. Indeed, it is difficult to ascribe any other interpretation to plaintiffs' pleaded allegations regarding the contract of November 25, 1963 and the resultant assertions that the general partners of Haupt have divested themselves of responsibility or power to act in the dissolution process. If I am reasonably correct in this view, it would appear to follow that plaintiffs can pursue an appropriate and meaningful remedy in the New York courts pursuant to Sections 99(1) (c) and 63 of the New York Partnership Law. Moreover, although the necessary facts are not before me, it is conceivable that plaintiffs may have a suitable remedy before the bankruptcy side of this court.[3]

■ In any event, I conclude that the derivative analogy pressed by the plaintiffs in this complaint does not accord with the essentials of the limited partnership provisions of the New York statutes and that, thus, plaintiffs do not have requisite standing, within the meaning of Rule 17, F.R.Civ.P., to bring this particular action or claim. In this view of the matter, of course, there is no need to consider further defendants' additional point that the complaint does not adequately state a claim for which relief can be granted.

Before closing, however, it may be desirable to treat in brief compass certain arguments pressed by plaintiffs as late as several days prior to the date of this opinion. Plaintiffs, for example, have cited two comparatively recent decisions of New York trial courts permitting intervention by limited partners in existing suits wherein it was at least claimed that partnership interests were not being adequately protected by the general partners. Cooper Products Co. v. Twin Bowl Co., New York Law Journal, August 21, 1962, page 8, column

---

2. Indeed, by its terms, the Clayton Act confers a right of action to one who has been "injured in his business or property" (15 U.S.C. § 15).

3. There is presently pending in this District In the Matter Ira Haupt & Co., a Limited Partnership, No. 64 B. 259, proceedings for an arrangement under Chapter XI.

3 (Sup.Ct., Kings Co.); Executive Hotel Associates v. Elm Hotel Corp., 41 Misc. 2d 354, 245 N.Y.S.2d 929 (Civil Court of New York, 1964). It might be a sufficient answer to observe that these cases turned on facts so different from those pleaded in the present complaint as to render them of doubtful analogy here. Beyond this, they are probably distinguishable on the ground that they involved existing law suits wherein the courts were constrained to permit post-commencement intervention by limited partners so as to protect the latters' rights vis-a-vis those of the general partners. But if forced to assume that these two recent authorities are not distinguishable, I would then determine that they do not strictly accord with the significant provisions of the New York Partnership Law as consistently construed by the appellate courts of this state.[4]

█ Plaintiffs resort, in addition, to the argument that they and other limited partners are the *cestuis que trust* of the defendant and liquidating trustee, Kamerman, and that they therefore come under the familiar rule that bene-ficiaries or *cestuis* may sue to enforce a claim when their trustee has disqualified himself from so doing. As indicated heretofore, I am willing to accept this rationale or something closely akin to it; indeed, I read the provisions of the New York Partnership Law to in large effect incorporate significant aspects of such a theory where appropriate. But plaintiffs and I take different forks of the road when we seek to answer the ultimate question of where and how to effectuate the theory. In short, if plaintiffs are to establish that defendant Kamerman has breached a fiduciary obligation to them as *cestuis que trust*,[5] the New York legislature has plainly pointed out for them an appropriate procedural avenue before a New York court. To be sure, it might be otherwise if Haupt were a terminated entity, but even plaintiffs must concede that dissolution of the firm has not been completed and that thus under New York law the Haupt partnership has not been terminated. New York Partnership Law, § 61.[6]

Accordingly, defendants' motions to dismiss the complaint are granted. Settle an order.

4. Lieberman v. Atlantic Mutual Insurance Co., 62 Wash.2d 922, 385 P.2d 53 (1963), the Supreme Court of Washington had occasion to construe Section 25.08.260 of the Revised Code of Washington, which is identical to Section 115 of the New York Partnership Law, and held that its terms precluded a limited partner from suing on a fire insurance policy issued to the partnership. All that the Washington court said on this point was, "[A] limited partner, not being a proper party to a suit brought by the partnership, rather obviously cannot institute a suit on behalf of the limited partnership." Ibid. at page 56.

5. Parenthetically, plaintiffs' *cestui que trust* argument is one of the factors tending to fortify the earlier expressed conclusion that plaintiffs in the main are aggrieved by the method of dissolution of Haupt as followed by the liquidation trustee.

6. On August 11, 1964, another judge of this court filed an opinion in Civil Actions Nos. 64–692 and 64–935, both entitled Klebanow et al. v. Funston et al., 35 F.R.D. 518, suggesting *inter alia* that the *cestui que trust* theory is or may be a sufficient basis to permit limited partners to bring a derivative action on behalf of Haupt. The very existence of these two other actions, not to mention their apparent presentation of the same or similar derivative action issue, was not brought to my attention until August 12, 1964 even though counsel for plaintiffs in all three of these cases are the same. Under such circumstances, even were I to assume, which I cannot upon the information presently available to me, that the Funston decision of August 11, 1964 is directly in point, I see no compelling reason to regard that opinion as *stare decisis* with respect to the instant complaint.