In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.

Bernard KLEBANOW, George Lewis, Michael Sloan and Harold L. Marantz, Kenneth Alan Marantz and Edith Lee Marantz, as Executors of the Estate of Charles Marantz, and Lazarus S. Heyman, Appellants,

v.

The CHASE MANHATTAN BANK and Manufacturers Hanover Trust Company, Appellees.

No. 312, Docket 29310.

United States Court of Appeals Second Circuit.

Argued Jan. 26, 1965.

Decided April 6, 1965.

Max Freund, New York City (Rosenman, Colin, Kaye, Petschek & Freund, New York City, on the brief), for appellants Klebanow, Lewis, Sloan and Marantz.

Abraham M. Glickman, New York City, for appellant Heyman.

William E. Jackson, New York City (Francis H. Musselman, Samuel R. Ballin, Arthur W. Rashap and Milbank, Tweed, Hadley & McCloy, New York City, on the brief), for appellee Chase Manhattan Bank.

Henry Landau, New York City (Horace J. McAfee and Simpson, Thacher & Bartlett, New York City, on the brief), for appellee Manufacturers Hanover Trust Co.

Leonard Zalkin, New York City (Zalkin & Cohen, New York City, on the brief), for First National City Bank and Morgan Guaranty Trust Co.

Before WATERMAN, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

On March 23, 1964, Klebanow, Lewis, and Sloan, three of the limited partners of Ira Haupt & Co., a New York Stock Exchange member firm, filed an involuntary petition in bankruptcy against Ira Haupt & Co. A week later, on March 30, the six general partners of Haupt filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, alleging that they represented the concern. After hearings on the desirability of a Chapter XI proceeding, Referee Ryan, before deciding on the Chapter XI request, went ahead with an election for a tentative trustee in bankruptcy, and on April 27 disallowed, so far as voting for trustee was concerned, the claims that

the limited partners attempted to vote, totaling $1,795,861.15, and claims sought to be proved by the appellee banks and others, totaling $11,398,174.61, and permitted, for voting purposes, only the one claim of an Oliver Lundquist for consultive services in the amount of $19,000. Mr. Lundquist voted for one Edward Feldman. Referee Ryan dismissed the petition of the general partners and the proceedings under Chapter XI, denied a motion to stay his order, adjudged Haupt a bankrupt, and confirmed the election of Edward Feldman as trustee of the bankrupt, all by an order dated June 26, 1964.

The limited partners filed petitions for review, challenging the referee's decision that they could not vote for a trustee and his confirmation of Edward Feldman as trustee. The law firms of Krause, Hirsch, Gross & Heilpern, and Delson and Gordon, purporting to act for Haupt itself, filed a petition to review the June 26 order of Referee Ryan dismissing the Chapter XI proceeding. These several petitions to review were heard by Judge Palmieri.

On August 11 Judge Palmieri affirmed Referee Ryan, holding that the Chapter XI proceedings were properly dismissed on the ground that "Haupt" had no power or right to initiate that move, that Feldman was properly nominated the trustee in bankruptcy, and that the referee properly disallowed the above mentioned claims.

There have been several appeals from Judge Palmieri's opinion and order. Now before us is the appeal of the limited partners challenging the affirmance of Referee Ryan's order wherein he rejected the claims of the limited partners and confirmed Feldman's election as trustee.

The Haupt partnership agreement provided that it should terminate on December 31, 1963. However, on November 18 Haupt was wiped out in the notorious DeAngelis vegetable oil debacle; three days later it was suspended by the New York Stock Exchange; and by November 25 it had $25,000,000 less assets than it had liabilities. Strong measures were taken; the Exchange itself agreed to contribute up to $12,000,000 to preserve its own reputation, and the banks agreed to subordinate their indebtedness owed to them in excess of $33,000,000 to the extent of the $12,000,000 advanced by the Exchange and up to another $12,000,000 if that amount was necessary to pay off customers whose securities were in the hands of Haupt at the time of the crash, i. e., the fiduciary claims. Apparently the limited partners were not parties to all these arrangements, but all the general partners were, including one Kamerman, who was designated under the partnership agreement as the sole managing and liquidating partner. Kamerman was now made responsible, as of November 1, 1963, for the orderly liquidation of the partnership within a two months' period although the partnership agreement, when made, had never contemplated any liquidation in November and December except a voluntary one of a sound financial organization.

Litigation over the authority of Kamerman and the general partners, prior to the individual bankruptcies of some of them, to act for the entire copartnership, the authority of the banking group as assignees, prior to the bankruptcy of the copartnership, as well as the authority of the trustee and of the limited partners to act through the trustee or adverse to his interests, is on appeal in this court. Additionally, in a case in which two of the limited partners sought to bring an action against the Exchange and Kamerman, reversing on appeal an order of Judge Tyler, Klebanow v. N. Y. Produce Exchange, 232 F.Supp. 965, in Docket No. 29270 this court upheld their standing to sue on behalf of the partnership. 344 F.2d 294, 2 Cir., 1965.[1]

The sole question brought before us on the instant appeal is the validity of the

---

1. In the meantime, after Judge Palmieri's decision, at least two of the general partners filed individual bankruptcies, and Professor Seligson is the trustee in those individual bankruptcies. Something was said on argument that he was acting as trustee of "Haupt." This does not appear from the appendices before us.

order upholding the referee's disallowance of appellants' voting claims, on the ground that limited partners were intended by Congress to be disfranchised by the provisions of § 44, sub. a of the Bankruptcy Act. We hold that this ruling was correct and affirm the order of the District Court.

Section 44, sub. a provides that the creditors of the bankrupt, "exclusive of the bankrupt's relatives or, where the bankrupt is a corporation, exclusive of its stockholders or members, its officers, and the members of its board of directors or trustees or of other similar controlling bodies," shall have the right to appoint one or three trustees for the estate. The word "corporation" is defined in § 1(8) to include among other things, "partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association." The problem arises here because Ira Haupt & Co., while obviously not a corporation, is not a partnership association of the kind specifically defined in the Act, since the general partners are personally liable for the debts of the partnership.

It is true, therefore, as appellants contend, that limited partners are not included within the literal language of the disfranchisement section. However, for this court to hold them not included in its terms would be inconsistent with the scheme of § 5, sub. g of the Act [2] as well as with the New York Partnership Law and Section 20 of the limited partnership agreement. Section 5, sub. g treats the general and limited partners alike and distinguishes their claims from the "partnership debt." To say now that for the purpose of electing the trustee the limited partners are to be treated as general creditors would mean, in many cases, that the limited partners would be able to elect a trustee partial to their interests and, by virtue of the priorities established by § 5, sub. g, necessarily adverse to the interests of the general creditors. Secondly, Section 20 of the agreement makes the debts and liabilities of the partnership to the general creditors superior to those of the limited partners; accordingly, as was true with § 5, sub. g, the general creditors are entitled to elect a trustee who is not in any position adverse to their interests. And, finally, the New York Partnership Law [3] clearly

2. "§ 5, sub. g. The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each general partner to the payment of his individual debts. Should any surplus remain of the property of any general partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be distributed among the individual partners, general or limited, or added to the estates of the general partners, as the case may be, in the proportion of their respective interests in the partnership and in the order of distribution provided by the laws of the State applicable thereto."

3. New York Partnership Law, McKinney's Consol.Laws, c. 39, §§ 98, 99 and 112 provide as follows:
"§ 98. Rights, powers and liabilities of a general partner

"(1) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to
"(a) Do any act in contravention of the certificate.
"(b) Do any act which would make it impossible to carry on the ordinary business of the partnership.
"(c) Confess a judgment against the partnership.
"(d) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose.
"(e) Admit a person as a general partner.
"(f) Admit a person as a limited partner, unless the right so to do is given in the certificate.
"(g) Continue the business with partnership property on the death, retirement or insanity of a general partner,

differentiates between creditors' claims and investors' interests.

In Klebanow v. N. Y. Produce, supra, this court held that on allegations of futility of demand on the partnership or liquidating partner, the limited partners of Haupt have standing to bring a derivative action on behalf of the partnership, noting that although a limited partner under New York partnership law has some resemblance to a creditor, nevertheless he is in the main "more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and 'have on demand true and full information of all things affecting the partnership * * *.' See N.Y. Partnership Law, §§ 98, 99, 112. That the limited partner is immune to personal liability for partnership debts save for his original investment, is not thought to be an 'owner' of partnership property, and does not manage the business may distinguish him from general partners but strengthens his resemblance to the stockholder; and even as to his prefer-

ence in dissolution, he resembles the preferred stockholder. * * *"

 As in that situation where it made sense to call the limited partners by whatever label was most apt in order to support their right to sue on behalf of the partnership, so here we feel that the purpose of § 44, sub. a, is best served by excluding them from voting in the election of a trustee. A limited partnership under New York law is possessed of sufficient of the powers and privileges of private corporations not possessed by individuals or general partnerships to meet the definition of "corporation" in § 1(8) of the Act. We have held that a limited partner is not a creditor and that a limited partnership is close enough kin to a corporation so that a general partner, who serves the same function as a corporate officer, is not privileged to withhold the partnership records from Internal Revenue. United States v. Silverstein, 314 F.2d 789, 791, 2 Cir., cert. den. 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963). The purpose of the disfranchisement provisions of the Act, as developed in cases on disfranchisement, both prior to and under the Act, see In re

---

unless the right so to do is given in the certificate.

"§ 99. Rights of a limited partner

"(1) A limited partner shall have the same rights as a general partner to

"(a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them.

"(b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable, and

"(c) Have dissolution and winding up by decree of court.

"(2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in sections one hundred and four and one hundred and five of this article.

"§ 112. Distribution of assets

"(1) In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

"(a) Those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners.

"(b) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions.

"(c) Those to limited partners in respect to the capital of their contributions.

"(d) Those to general partners other than for capital and profits.

"(e) Those to general partners in respect to profits.

"(f) Those to general partners in respect to capital.

"(2) Subject to any statement in the certificate or to subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims."

Latham Lithographic Corp., 107 F.2d 749, 750 (2 Cir. 1939), is best carried out by disallowing these claims · so far as voting for trustee is concerned. See 2 Collier, Bankruptcy, ¶44.02, p. 1640 (14th ed. 1964). Limited partners are too likely to be closely affiliated with the interests of the former management to share in the choice of the trustee who is to represent the interests of the ordinary creditors.

A New York limited partnership partakes sufficiently of the nature of a corporation so that limited partners may be considered stockholders or members within § 44, sub. a. The order disallowing their claims so far as eligibility to vote for trustee is concerned is affirmed.